OPINION OF THE COURT
 

 Alexander, J.
 

 Petitioners, two clinical medical laboratories enrolled as providers in the New York State Medical Assistance Program (Medicaid), challenge the constitutionality of 18 NYCRR 518.7,
 
 *542
 
 which authorizes withholding payment of reimbursement claims under certain specified circumstances as a deprivation of property without due process of law and further argue that the withholding was arbitrary and capricious. We hold that to the extent that providers enrolled in the Medicaid program may enjoy a constitutionally protected property right in the payment of their claims for reimbursement for services rendered the regulations at issue here provide adequate procedural due process and thus pass constitutional muster.
 

 As enrolled providers of clinical laboratory services in the New York State Medical Assistance Program (Medicaid), Medicon Diagnostic Laboratories, Inc. (Medicon) and FYM Clinical Laboratory, Inc. (FYM) perform clinical laboratory tests on Medicaid patients at the request of physicians. They are reimbursed for these tests by respondent State Department of Social Services (DSS), the agency charged with administering the Medicaid program in this State (Social Services Law §§ 20, 34, 363-a). As a result of a marked increase in Medicaid billings by medical laboratories in 1988,
 
 [1]
 
 DSS was prompted to investigate the billing practices of some 40 laboratories, including these petitioners.
 

 In May 1988, DSS auditors visited Medicon and photocopied approximately 100 records of tests purportedly ordered by approximately 10 physicians. Two of these physicians denied ordering tests for which Medicon claimed reimbursement and gave the auditors written statements to that effect.
 

 Medicon was advised that pending "review and verification” of its reimbursement claims, payment of these claims was being withheld pursuant to respondent’s regulatory and statutory authority to safeguard the expenditure of public funds
 
 (see,
 
 Social Services Law §§20, 34, 363-a, 367-a, 367-b) and maintain procedures to verify claims to avoid inappropriate payments
 
 (see,
 
 18 NYCRR 518.7, 540.8 [a] [1]; 540.11).
 
 [2]
 
 Medicon
 
 *543
 
 was advised that the withholding would not continue beyond 90 days unless a written draft audit report or notice of proposed agency action had in the meantime been sent to it.
 

 A draft audit report was issued well within 90 days of the notice. The report estimated that there had been overpayment to Medicon of approximately $1,022,182. The final audit report determined that the actual value of the overpayments was $930,919. Medicon was advised of its entitlement under the regulations to object to the findings in the draft audit report
 
 (see,
 
 18 NYCRR 515.6 [a]) and to an administrative hearing following the issuance of the final audit report
 
 (see,
 
 18 NYCRR 518.8 [b]). Medicon neither filed objections to the draft report nor demanded a hearing; rather it instituted an article 78 proceeding in which it sought to annul respondent’s determination to withhold payment of its claims, to invalidate the regulations authorizing the withholding, to obtain injunctive relief and money damages, and challenged, on due process grounds, the constitutionality of 18 NYCRR 518.7. Supreme Court, after converting the article 78 proceeding to a declaratory judgment action, relying on
 
 ADL, Inc. v Perales
 
 (US Dist Ct, SD NY, Aug. 2, 1988, Keenan, J.), declared 18 NYCRR 518.7 unconstitutional, annulled respondent’s determination withholding reimbursement, and otherwise denied the petition.
 

 On cross appeals, the Appellate Division modified Supreme Court’s order and judgment, declared 18 NYCRR 518.7 constitutional and validly promulgated, confirmed respondent’s determination, and otherwise affirmed the judgment as modified (145 AD2d 167). Petitioner’s appeal is before us as of right pursuant to CPLR 5601 (b) (1).
 

 DSS auditors made two visits to FYM in May 1988. On the first visit, they reviewed certain records involving Medicaid claims, and photocopied a number of files. They returned about a week later, reviewed additional records and photocopied records of 10 physicians who purportedly had requested laboratory work from FYM.
 

 FYM was notified that DSS was initiating "a partial withhold” of payments of its Medicaid claims pending "review and verification.” DSS’s investigation determined that various of the physicians whose records had been examined denied signing or authorizing various Medicaid billings claimed by FYM. Six physicians informed respondent that they had never ordered the tests FYM claimed to have performed at their
 
 *544
 
 request. Deeming FYM’s explanation of these discrepancies unsatisfactory and in consideration of findings made by the State Department of Health that FYM’s practices were seriously in violation of Department standards, DSS instituted full withholding pursuant to 18 NYCRR 518.7. FYM was notified that the withholding would continue pending a draft audit report. A draft audit report was issued in September, again well within the allowed 90 days from the date of the notice. The amount of overpayment was estimated to be approximately $1,105,295.
 

 As Medicon had done, FYM instituted an article 78 proceeding, prior to receipt of the draft audit, challenging the constitutionality of 18 NYCRR 518.7, and seeking annulment of respondent’s determination, invalidation of the regulation, injunctive relief, and damages. Supreme Court dismissed the petition as failing to state a cause of action.
 

 The Appellate Division determined that FYM had abandoned its damages claim, and
 
 sua sponte
 
 converted the article 78 proceeding to a declaratory judgment action (CPLR 103 [c]), modified the Supreme Court judgment by reversing the "dismissal” of FYM’s causes of actions challenging the constitutionality and validity of the promulgation of 18 NYCRR 518.7, declared that 18 NYCRR 518.7 had not been shown to be unconstitutional or invalidly promulgated, and otherwise affirmed the judgment (147 AD2d 840). FYM’s appeal is also before us as of right, pursuant to CPLR 5601 (b) (1).
 

 In both cases, the Appellate Division concluded that petitioners enjoy no property interest in the prompt payment of Medicaid claims that would entitle them to due process safeguards. The court further determined that to the extent any such property right existed in claims for work performed, the regulations afforded all the process that petitioners were due. As to Medicon and FYM’s contention that the withholding was arbitrary and capricious, the Appellate Division concluded that these claims had become moot because the withheld funds had been released. In Medicon, the Appellate Division alternatively found that because the record demonstrated that reliable information of fraud, willful misrepresentation, program abuse, or unacceptable practice existed, the withholding was proper and not arbitrary and capricious.
 

 On their appeals to us, both Medicon and FYM contend that the withholding of payment of the Medicaid claims without giving them prior notice and a meaningful opportunity to
 
 *545
 
 respond constitutes a seizure of their property in violation of their constitutional right to due process. They assert that they received no notice until after the withholding had begun, that the notice furnished failed to inform them of the reasons for the withholding, failed to summarize the evidence supporting the decision to withhold, and failed to describe the process by which they could obtain relief. We reject these arguments and now affirm.
 

 The requirements of procedural due process apply to preclude the deprivation of interests encompassed by the Fourteenth Amendment’s protection of liberty and property
 
 (Board of Regents v Roth,
 
 408 US 564). The Supreme Court has established, however, that "the range of interests protected by procedural due process is not infinite.”
 
 (Id.,
 
 at 570.) Property interests are not created by the Constitution, but rather "by existing rules or understandings that stem from an independent source such as state law”
 
 (Cleveland Bd. of Educ. v Loudermill,
 
 470 US 532, 538, quoting
 
 Board of Regents v Roth,
 
 408 US 564, 577,
 
 supra).
 
 In considering whether a right is granted by State law, the focus is on the relevant statute, regulation, or contract establishing eligibility for the benefit at issue
 
 (Plaza Health Labs. v Perales,
 
 878 F2d 577, 581;
 
 see, e.g., Board of Regents v Roth,
 
 408 US 564, 577-578,
 
 supra; Goldberg v Kelly,
 
 397 US 254, 261-262).
 

 The Medicaid program uses public funds to provide medical services to needy people
 
 (Matter of Camperlengo v Blum,
 
 56 NY2d 251, 255). Under that program, the State, assisted by the Federal Government (42 USC § 1396
 
 et seq.),
 
 reimburses providers enrolled in the program for the cost of rendering medical care to qualified patients.
 

 We have recognized that "the public must be assured that the funds which have been set aside (for providing medical services to the needy) will not be fraudulently diverted into the hands of an untrustworthy provider of services”
 
 (Schaubman v Blum,
 
 49 NY2d 375, 379). To that end, the agency charged with the responsibility of administering the medicaid program has inherent authority to protect the quality and value of services rendered by providers in that program
 
 (Matter of Siddiqui v New York State Dept. of Social Servs.,
 
 116 AD2d 909;
 
 see also, Matter of Rubin v Campbell,
 
 48 NY2d 805;
 
 Matter of Brown v New York State Dept. of Social Servs.,
 
 106 AD2d 740,
 
 lv denied
 
 65 NY2d 604).
 

 Procedures for investigating the validity of claims for reim
 
 *546
 
 bursement are set forth in the regulations promulgated by respondent
 
 (see generally,
 
 18 NYCRR parts 517, 518, 519). By enrolling in a medical assistance program, a provider agrees to abide by these regulations, to permit audits of its books and records relating to services furnished and payments received under the program (18 NYCRR 504.3 [g]), and to submit to audit and claim review pursuant to which the Department may "pend claims for further audit or review” (18 NYCRR 504.8 [c]). Where there is reliable information that a provider is involved in fraud, willful misrepresentation, program abuse or unacceptable practices, 18 NYCRR 518.7 authorizes DSS to withhold reimbursement without prior notice or opportunity to be heard.
 

 Petitioners acknowledge the State’s interest in the integrity of the Medicaid program and its right to conduct audits of reimbursement claims but contend that withholding reimbursement funds without prior notice and an opportunity to be heard constitutes a "seizure” of property in violation of due process. Contrary to these assertions, we conclude that the regulations properly balance and adequately protect any property interest petitioners have in reimbursement of their claims.
 

 We have said that "due process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand”
 
 (LaRossa, Axenfeld & Mitchell v Abrams,
 
 62 NY2d 583, 588, citing
 
 Morrissey v Brewer,
 
 408 US 471, 481). In determining whether due process standards have been met, "we look to the three distinct factors that form the balancing test enunciated by the Supreme Court in
 
 Mathews v Eldridge
 
 (424 US 319, 335): 'First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail’ ”
 
 (Morgenthau v Citisource, Inc.,
 
 68 NY2d 211, 221;
 
 see also, People ex rel. Vega v Smith,
 
 66 NY2d 130, 141;
 
 Matter of Tammie Z.,
 
 66 NY2d 1, 4;
 
 LaRossa, Axenfeld & Mitchell v Abrams,
 
 62 NY2d 583,
 
 supra).
 

 The procedures for withholding payment of Medicaid reimbursement claims set forth in section 518.7 of the regulations satisfy the
 
 Mathews
 
 test. They adequately safeguard the private interests of petitioners, and minimize the risk of errone
 
 *547
 
 ous deprivation while serving the substantial government interest in safeguarding the integrity of the Medicaid program. Moreover, the regulations permit withholding payment only where there is "reliable information that a provider is involved in fraud or willful misrepresentation involving claims submitted to the program or has abused the program or committed an unacceptable practice” (18 NYCRR 518.7 [a]). Notice of the withholding must be given to the provider promptly, within five days (18 NYCRR 518.7 [b]), and the notice must describe the reasons for the withholding and afford the provider an opportunity to make written submissions and arguments in opposition (18 NYCRR 518.7 [c] [4]). The withholding may not continue beyond 90 days unless a written report or notice of proposed agency action is given to the provider (18 NYCRR 518.7 [d]) in which event the provider would be entitled to request a hearing (18 NYCRR 518.7 [d] [2]; 518.8 [b]).
 

 Significantly, petitioners do not challenge the facial adequacy of these regulations. Rather, they contend that they were entitled to notice prior to the withholding of their reimbursement claims and that the notice they were provided failed adequately to inform them of the reasons for the withholding, failed to summarize the evidence supporting the withholding, and failed to describe the process by which they could obtain relief. These contentions are without merit. The record in each case demonstrates that Medicon and FYM were timely informed that certain named physicians denied having requested tests for which petitioners had submitted reimbursement claims, that petitioners were accorded an opportunity to respond to those claims and were fully informed as to the processes by which they could obtain relief.
 

 Finally, petitioners’ contention that the decision to withhold payment was arbitrary and capricious is without merit. Respondent’s decision to withhold payment pending the audit was based on "reliable information” — written statements of several physicians indicating that some of petitioners’ claims were improper. This provided an adequate basis for the withholding of payment pending audit and review.
 

 Accordingly, the orders of the Appellate Division should be affirmed.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
 

 In each case: Order affirmed, with costs.
 

 [1]
 

 . DSS asserts that Medicon’s billings, which were approximately $1.5 million in 1987, rose to an annual rate of $13.8 million during an eight-week period in March and April 1988, and FYM’s billings for the first quarter of 1988 increased 58% over its billings for a like period in 1987. Total Medicaid billings for 1987 were $100 million; billings for the first three months of 1988 were running at a rate equivalent to $240 million per year.
 

 [2]
 

 . 18 NYCRR 518.7 became effective on June 6, 1988. It permits respondent to withhold payment on the Medicaid claims of providers when there is "reliable information that a provider is involved in fraud or willful misrepresentation involving claims submitted to the program, or has abused the program or committed an unacceptable practice” (18 NYCRR 518.7 [a]).