■ In the Matter of ASTOR GARDENS HEALTH CARE CENTER, INC., Appellant, v ANTONIA NOVELLO, as Commissioner of Health of the State of New York, Respondent. [758 NYS2d 428] —Kane, J. Appeal from a judgment of the Supreme Court (Bradley, J.), entered January 23, 2002 in Albany County, which dismissed petitioner's application, in a proceeding pur-

suant to CPLR article 78, to, inter alia, vacate audits conducted by the Department of Health.

Petitioner, while operating a nursing home, received Medicaid payments through the Department of Health (hereinafter DOH). Pursuant to regulations, DOH began auditing petitioner's semiannual patient review instruments (hereinafter PRIs) for September 1994, to verify petitioner's Medicaid reimbursement rates. In February 1996, petitioner sold its nursing home to Gold Crest Care Center, Inc. The purchase agreement provided that petitioner would be liable to Gold Crest for adjustments or recoupments that arose concerning time periods when petitioner operated the facility. To allow Gold Crest to assume petitioner's Medicaid provider number, DOH required that the two corporations execute an enrollment continuation agreement, which included a provision that DOH could recoup from the new owner any overpayments from any time period when either owner ran the facility.

After the sale, DOH completed its audit of petitioner's September 1994 PRIs and performed audits of the March 1995 and September 1995 PRIs as well. Communications regarding the process were directed to Gold Crest after February 1996. As a result of the audits, DOH revised the facility's Medicaid reimbursement rates, resulting in an overpayment of $1 million attributable to time periods when petitioner operated the facility. DOH stated that it would recoup these overpayments from Gold Crest. When petitioner became aware of the determined overpayments, it unsuccessfully requested an opportunity to provide DOH additional information. Petitioner commenced this proceeding pursuant to CPLR article 78. Supreme Court determined, contrary to petitioner's assertions in its petition, that DOH was not required to provide petitioner with notice and the DOH regulations are not unconstitutional or contrary to petitioner's due process rights. Petitioner appeals.

Initially, respondent claims, as an alternate ground for affirmance, that the merits need not be reached as the proceeding is barred by the statute of limitations. The record does not contain the papers issued by DOH in 1998 or the papers accompanying its February 14, 2001 letter, nor does it appear that these papers were submitted to Supreme Court. We are unable to consider this issue as the record is deficient (*see Matter of Puff v Jorling*, 188 AD2d 977, 981 [1992]), making it impossible to determine whether the 1998 and 2001 documents were identical, which would render this action time-barred.

Regulations require DOH to provide "the facility" an on-site

conference prior to completion of the PRIs (*see* 10 NYCRR 86-2.30 [e] [5]). The definition of "facility" includes nursing homes, "provided that such facility possesses a valid operating certificate" (10 NYCRR 86-2.1 [a]). When petitioner transferred ownership and operation of the nursing home, it was required to surrender its operating certificate (*see* 10 NYCRR 401.3 [j]), thus it ceased being a "facility" under the regulations. As the regulations require DOH to communicate with and provide an on-site conference to "the facility," DOH acted reasonably and according to its regulations by working with Gold Crest, not petitioner. While petitioner is correct that the regulations do not require patient records to be stored at the nursing home, the regulations do require that records be maintained "in accordance with accepted professional standards and practice," "readily accessible," "complete," and "systematically organized" (10 NYCRR 415.22 [a]). DOH's interpretation of the regulations was rational (*see Matter of Elcor Health Servs. v Novello*, 295 AD2d 772, 774 [2002], *lv granted* 99 NY2d 503 [2002]). If petitioner kept records as required by the regulations, they should have been easily found by DOH and Gold Crest, yet many of the records were missing during the audit.

It was also reasonable for DOH to rely on the enrollment continuation agreement, in which petitioner and Gold Crest affirmed that Gold Crest would be responsible for all rate adjustments for periods of payment to the new and former owners. Although the purchase agreement for the facility dealt with liability for retroactive recoupments as between those two corporations, DOH was not a party to that contract. DOH reviewed the agreement only to ensure that the new owner was financially sound. Petitioner had the opportunity to protect itself, ensuring notice of audits and their progress, by making such a request to DOH, or by including a clause in its 33-page purchase contract obligating Gold Crest to provide such notice. Review of the September PRIs began while petitioner still owned the facility, yet it made no efforts to keep informed regarding that audit. Its argument now that DOH should have provided it notice is unpersuasive.

Petitioner further argues that DOH's failure to provide notice, permit postaudit submissions, and provide a postaudit hearing deprived it of property without due process. Before the State may deprive a person of his or her possessory interest in property, due process requires that the person be given notice and an opportunity to be heard (*see Matter of Medicon Diagnostic Labs. v Perales*, 74 NY2d 539, 546 [1989]). Petitioner had notice of DOH's audit of the September 1994 PRIs. As

discussed above, petitioner's actions or inactions resulted in its failure to receive further notice. Petitioner had the opportunity to make submissions before the on-site review was complete, but relinquished that right by failing to keep apprised of the progress of the audit. As facilities are granted the opportunity to make submissions during the review process, regulations prohibiting submissions of additional information after DOH concludes its on-site review (*see* 10 NYCRR 86-2.30 [e] [5]) do not deprive facilities of due process. Regarding an opportunity to be heard, Medicaid reimbursement rates are provisional in nature, not becoming final until they are audited or the expiration of the six-year period in which DOH may audit (*see* 10 NYCRR 86-2.7; *Matter of Sylcox v Chassin*, 227 AD2d 834, 835 [1996]). Where no constitutionally protected rights exist, such as when a nursing home owner is receiving payments provisionally, there is no entitlement to a hearing when there is a deprivation of such property, as the possessor never had a vested right to that property (*see Matter of Cortlandt Nursing Home v Axelrod*, 66 NY2d 169, 178-179 [1985]). Accordingly, petitioner was afforded all the process it was due.

Mercure, J.P., Crew III, Spain and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.