■ In the Matter of NORTHERN METROPOLITAN RESIDENTIAL HEALTHCARE FACILITY, INC., Appellant-Respondent, v ANTONIA C. NOVELLO, as Commissioner of Health, et al., Respondents-Appellants. [806 NYS2d 291]—

Cardona, P.J. Cross appeals from a judgment of the Supreme Court (Lamont, J.), entered May 28, 2004 in Albany County, which partially dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Department of Health requiring petitioner to repay certain Medicaid reimbursements.

In the 1980s, petitioner, the operator of a residential health care facility in Rockland County, received contingent approval from respondent Department of Health (hereinafter DOH) for the establishment of an adult day health care (hereinafter ADHC) program to serve elderly and infirm members of the local community. As a result, petitioner prepared a projected ADHC budget which was to be used by DOH in promulgating the Medicaid reimbursement rate for the program. In so doing, petitioner relied upon figures associated with its nursing home operation. However, in computing the estimated cost of transporting ADHC registrants to and from the program, petitioner used a typical $10 round-trip taxi fare and, based upon the anticipated number of registrants, a $55,000 annual transportation expenditure was budgeted.

DOH issued an operating certificate for the ADHC program in October 1988 and petitioner began admitting participants shortly thereafter. Although the program had only a handful of participants at the outset, it became apparent to petitioner that the transportation needs of its clientele were more extensive than anticipated. Specifically, due to the age and infirmity of most registrants, it was evident that taxi transport was largely impractical and, as a result, during the first three months of its ADHC program, petitioner utilized its handicap-accessible van to transport registrants. However, as the number of ADHC registrants increased, petitioner entered into contracts with five independent providers to transport registrants. Over the next several years, transportation was largely provided by outside providers.

In March 1996, petitioner was contacted by the Department of Social Services (hereinafter DSS), which advised that it would be auditing petitioner's transportation costs. Petitioner objected on the grounds that DSS lacked the regulatory authority to conduct the audit since petitioner's Medicaid reimbursement rate was based on petitioner's projected budgeted costs, rather than actual costs incurred. DSS rejected that contention and, in a draft audit report (see 18 NYCRR 517.5) issued in June 1997,

it disallowed the transportation portion of petitioner's reimbursement rate. DSS concluded that, as a result of petitioner's contracts with outside transportation providers which billed Medicaid directly for their services, petitioner had "deleted" its budgeted transportation costs in violation of 10 NYCRR 86-2.27. Moreover, DSS determined that, although petitioner incurred a "small amount" of transportation costs over the audited period, such costs were related to private-pay patients and were therefore not "allowable costs" within the meaning of 10 NYCRR 86-2.17 (see also 10 NYCRR 86-2.9 [c]).

Subsequently, the statutory authority to conduct Medicaid audits was transferred from DSS to DOH (see L 1996, ch 474, § 233-248; L 1997, ch 436, § 122 [a], [e]) and, as a result, DOH issued a final audit report in September 1998 (see 18 NYCRR 517.6; see also L 1996, ch 474, § 244). The final report adopted the factual determinations made in the draft report issued by DSS and concluded that petitioner had received a significant Medicaid overpayment. Upon administrative appeal, DOH's determination was for the most part affirmed and, in the instant CPLR article 78 proceeding, Supreme Court upheld the recoupment for rate years 1992 through 1995.[1]

We first address petitioner's claim that DSS lacked the legal authority to audit its ADHC Medicaid reimbursements. In this regard, petitioner primarily claims that 18 NYCRR 517.3 does not authorize such an audit because the regulation only applies to "cost-based" and "fee-for-service" providers and petitioner, as a "budget-based" provider, qualifies as neither. We find petitioner's reasoning unpersuasive for the reasons that follow.

There can be little doubt that DSS was charged with the responsibility of conducting the audit at issue at the time it was

---

1. At the initial conference regarding the audit, DSS staff indicated that, although the original audit notice listed 1992 through 1995 as the relevant period, the audit might also encompass the rate years 1989 through 1991. When petitioner protested, DSS indicated that it would henceforth send formal notice of its intent to expand the audited period. No such notice was subsequently issued by DSS. The draft audit report issued by DSS variously referred to the 1989-1995 and 1992-1995 rate periods as the subject of the audit, and the final report issued by DOH expressly encompassed the period from January 1989 through December 1995. Upon administrative appeal, the Administrative Law Judge annulled the determination as to rate years 1989 and 1990 as time-barred (see 18 NYCRR 517.3) and Supreme Court later held that respondents were barred from recovering overpayment for the 1991 rate year. Although that part of Supreme Court's determination served as the basis for respondents' cross appeal, respondents have not briefed the issue and merely seek affirmance of Supreme Court's judgment. We therefore deem the cross appeal and all issues related to the 1989 through 1991 rate years abandoned (see Buttles v Natale, 226 AD2d 986, 988 [1996], lv denied 88 NY2d 810 [1996]).

commenced. At that time (*see* L 1996, ch 474, § 268 [32] [k]), DSS was the "single state agency" authorized to administer the Medicaid program in New York (Social Services Law former § 363-a [1]; *see also* Social Services Law former § 2 [1]) and was specifically empowered to conduct audits (*see* Social Services Law § 368-c [1]; *see also* Social Services Law former § 2 [6]) and promulgate regulations in order to implement its statutory directives (*see* Social Services Law former § 363-a [2]; § 368-c [5]; *see also* Social Services Law former § 2 [6]; *see generally* *Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581, 591-592 [2005]; *Matter of Mercy Hosp. of Watertown v New York State Dept. of Social Servs.*, 79 NY2d 197, 200-201 [1992]).[2] Accordingly, pursuant to regulations promulgated by DSS, all providers of Medicaid reimbursable services were subject to audit by DSS (*see* 18 NYCRR 504.8; *see also Matter of Medicon Diagnostic Labs. v Perales*, 74 NY2d 539, 546 [1989]) and petitioner unquestionably qualified as a "provider" within the meaning of the regulations (*see* 18 NYCRR 504.1 [d] [19]; *see also* 18 NYCRR 504.1 [d] [17]; 515.1 [b]; 517.2).

Nor does 18 NYCRR 517.3 undermine the conclusion that petitioner was subject to a DSS audit. Pursuant to that regulation, the fiscal and statistical records of "cost-based" and "fee-for-service" providers may be audited (18 NYCRR 517.3 [a], [b]). Notably, under DOH's interpretation of this regulation,[3] petitioner qualifies as a cost-based provider, notwithstanding the fact that its Medicaid reimbursement rate is computed according to its budgeted, rather than actual costs. This interpretation is entitled to deference by this Court (*see Matter of Marzec v DeBuono*, 95 NY2d 262, 266 [2000]; *Matter of Elcor Health Servs. v Novello*, 295 AD2d 772, 774 [2002], *affd* 100 NY2d 273 [2003]) and is, in any event, a logical and reasonable explanation of the regulatory terms. A careful review of the regulation makes it clear that it is primarily a record-keeping rule which distinguishes between "cost-based" and "fee-for-service" providers in order to dictate the types of records which should be maintained by a given provider in expectation of an audit. Thus, a cost-based provider is required to maintain records

---

**2.** Prior to 1983, DOH, among other state agencies, possessed responsibility for Medicaid audits and it promulgated its own regulations accordingly (*see e.g.* 10 NYCRR 86-2.7). Moreover, even after the transfer of the Medicaid audit function to DSS, DOH retained Medicaid rate-making responsibilities for residential health care facilities (*see* Public Health Law § 2808; *see generally Matter of Blossom View Nursing Home v Novello, supra* at 591).

**3.** Upon the transfer of the Medicaid audit function from DSS to DOH, the then-in-effect rules promulgated by DSS were expressly continued as the rules of DOH (*see* L 1996, ch 474, § 242).

which were used to prospectively establish its reimbursement rate (*see* 18 NYCRR 517.3 [a] [1]) and, conversely, a fee-for-service provider must maintain the records necessary to retrospectively justify the rated payments it received (*see* 18 NYCRR 517.3 [b] [1]). Contrary to petitioner's position, the regulation's omission of an explicit reference to providers who operate on a budget-based rate is not dispositive. Such providers are, in fact, cost-based providers who, due to an inadequate actual cost experience, have a rate established on the basis of *anticipated* costs, rather than actual costs (*compare* 10 NYCRR 86-2.9 [b] *and* 10 NYCRR former 86-2.9 [d] *with* 10 NYCRR 86-2.9 [a]; *see also* 10 NYCRR 86-2.15).[4] For all the reasons stated, we conclude that DSS properly exercised its regulatory authority to conduct the audit at issue.

We next turn to the propriety of DOH's ultimate disallowance of petitioner's ADHC transportation costs. 10 NYCRR 86-2.27 requires providers to notify DOH of the "deletion" of any previously offered services and provides that overpayments made by reason of such a deletion are recoverable by DOH (*see generally* 18 NYCRR part 518). As noted above, petitioner originally budgeted $55,000 per year in transportation expenditures and this projection was included in petitioner's ADHC Medicaid reimbursement rate. Nonetheless, shortly after the ADHC program began operation, petitioner contracted with outside providers for the transportation of its ADHC registrants and it thereafter incurred no actual costs in transporting its Medicaid patients because the independent transportation companies billed Medicaid directly for their services.[5] Although petitioner contends that this arrangement did not constitute a "deletion" of services because its ADHC patients continued to actually receive transportation service, we find DOH's interpretation of its own regulation to be more persuasive (*see Visiting Nurse Serv. of N.Y. Home Care v Department of Health*, 5 NY3d 499, 506 [2005]). DOH's view that a service is "deleted" when the provider ceases to be financially responsible for same is consistent with the regulation's explicit reference to "the cost-impact" of such deletion upon the provider. Moreover, such interpretation appears consistent with prior DSS precedent on this issue.

4. Having determined that DSS could rely on its own regulations in undertaking the audit of petitioner's ADHC program, we decline to address petitioner's collateral claim that DSS could not rely upon then-existing DOH regulations (*see e.g.* 10 NYCRR 86-2.7, 86-2.15 [d]) in conducting the audit.

5. We note that, although petitioner did incur some transportation costs during the relevant period, DSS found that such costs corresponded to private-pay ADHC registrants exclusively and petitioner does not dispute DSS's conclusion in this regard.

Accordingly, under the circumstances, we cannot conclude that the construction afforded by DOH is irrational or unreasonable and its determination must therefore be sustained (*see Matter of Marzec v DeBuono, supra* at 266).

Mugglin, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.