■ Ruskin Associates, LLC, Appellant, v State of New York Division of Housing and Community Renewal, Respondent. [908 NYS2d 392]—

Order, Supreme Court, New York County (Carol R. Edmead, J.), entered June 10, 2009, which, inter alia, denied as untimely the petition seeking an order directing respondent to determine a rent overcharge complaint that had been brought 30 years earlier, and granted respondent's cross motion to dismiss the proceeding brought pursuant to CPLR article 78, unanimously affirmed, without costs.

In response to tenant Sylvain Gilary's overcharge complaint, the Conciliation and Appeals Board (CAB) advised him in a letter dated August 28, 1979 that "[a] preliminary check of the records . . . failed to reveal an enrollment for your dwelling unit" with the Rent Stabilization Association (RSA). Lack of enrollment, the letter explained, meant that CAB lacked jurisdiction over the matter, which would have to be referred to the New York City Department of Housing Preservation and Development (HPD). This letter was also forwarded to the owner of the building, Stephen Cox/GAEA Realty. Subsequently, by letter dated November 1, 1979, CAB forwarded Gilary's complaint to HPD for appropriate action, stating, "A check of the records indicates that this premises is [sic] not enrolled with [the RSA]."

As before, a copy of the letter was sent to the owner. In September 1980, a new owner bought the building.

HPD's Office of Rent Control, by order dated April 1, 1981, determined that Gilary's apartment was rent-controlled and established a maximum base rent (MBR) for it. The landlord protested, claiming that the building was commercial rather than residential. In support of that claim, he submitted a 1972 certificate of occupancy for the building showing that its usage was for 10 offices, as well as the subject apartment's 1977 lease with a provision that it be used only for professional purposes. The owner contended further that, even if the apartment was residential, it was not rent-regulated because the building had fewer than six residential units.

Gilary, on the other hand, contended that the building contained 10 apartments, all with kitchens and bathrooms, of which six had residential tenants, two had commercial tenants, and two were vacant. Gilary submitted a 1974 residential lease between the prior tenant and the prior owner and a 1976 residential sublease between the prior tenant and himself.

As to the past history of the subject building, HPD records reflected that prior owners had been granted MBR increases in 1972, 1976 and 1978. The owner's 1972 application for rent increases indicated that the building contained six apartments, while on the 1978 application the owner listed the building as having 10 apartments. The 1980 application was denied because the landlord failed to properly certify and remove violations. A July 1980 inspection of the building found that two apartments were still occupied by the tenants listed on the 1972 application, which meant that they were still rent-controlled. A March 1981 inspection of Gilary's apartment found that at least 95% of the space was being used for residential purposes.

By order dated April 29, 1983, HPD denied the owner's protest, stating:

"The Rent Stabilization Law of 1969 applies to multiple dwellings containing six or more dwelling units and requires such buildings to be registered with the [RSA]. Section 3 of the Rent Stabilization Regulations provides that upon a determination that the owner of a dwelling unit subject to the rent stabilization law has not joined the association, such dwelling units become subject to rent control.

"In the instant case, the evidence establishes that the subject building contains at least six dwelling units and is therefore within the definition of buildings required to be registered with the [RSA]. . . . [A]s a consequence of the failure to so register . . . the subject accommodation became subject to rent control as of January 1, 1980."

The above determination was not judicially challenged in any way, and nothing further transpired for the next 25 years. However, by letter dated June 30, 2008, petitioner herein, a successor owner of the premises, asked the Division of Housing and Community Renewal (DHCR), as the successor agency of HPD and CAB, to reconsider the April 29, 1983 order. Petitioner maintained that the order was a nullity because only CAB had jurisdiction to determine whether a building was subject to the Rent Stabilization Law, and here, while CAB found that the building was not enrolled with the RSA, which was undisputed, it was HPD that determined that it had six or more dwelling units and therefore should have been enrolled. Petitioner asserted that this determination was a nullity on the ground that it was in excess of HPD's jurisdiction. By letter dated August 27, 2008, DHCR denied petitioner's request, noting that HPD had jurisdiction because the proceeding was commenced on November 1, 1979, when CAB, having determined that the premises were not enrolled with the RSA, referred the matter to HPD for appropriate action.

In December 2008, petitioner, arguing that Gilary's 1979 rent overcharge complaint had never been resolved because HPD lacked jurisdiction to decide it, commenced this mandamus proceeding to compel DHCR, as successor to CAB under the Omnibus Housing Act of 1983, to determine or dismiss the rent overcharge complaint, which at that point was nearly 30 years old. Supreme Court granted DHCR's motion to dismiss the proceeding as untimely, and we affirm.

A CPLR article 78 proceeding seeking mandamus to compel accrues even in the absence of a final determination (see *Academy St. Assoc., Inc. v Spitzer*, 44 AD3d 592 [2007]). Hence, the statute of limitations for such a proceeding runs not from the final determination by the agency but from the date upon which the agency refuses to act (see *Austin v Board of Higher Educ. of City of N.Y.*, 5 NY2d 430, 442 [1959]). CAB unequivocally declared its refusal to act in its November 1, 1979 letter referring Gilary's complaint to HPD. Accordingly, the statute of limitations on a proceeding seeking to compel CAB to determine that complaint began to run on or about November 1, 1979. There is no question that a proceeding brought nearly 30 years later to compel CAB or its successor, DHCR, to determine or dismiss Gilary's complaint is untimely.

In view of this conclusion, we find it unnecessary to address the other contentions raised by the parties. Concur—Gonzalez, P.J., Tom, Friedman, McGuire and Abdus-Salaam, JJ.