OPINION OF THE COURT
Barbara Jaffe, J.
By amended notice of petition dated July 13, 2011, petitioner brings this CPLR article 78 proceeding seeking a judgment of mandamus compelling respondents to: (1) hold a hearing before the Police Pension Fund (PPF) Medical Board on petitioner’s health problems for the purpose of determining his eligibility for an accidental disability retirement (ADR) pension pursuant to the World Trade Center presumption (Administrative Code of City of NY § 13-252.1) (WTC presumption); or (2) permit petitioner to apply for an ADR pension pursuant to the WTC presumption or Administrative Code § 13-206 (g); or (3) *585 temporarily reinstate petitioner as an employee with respondent New York City Police Department (NYPD) to satisfy the membership requirement of the WTC presumption; and (4) to hold a name-clearing hearing. Respondents oppose.
I. Background
On December 8, 1997, petitioner was appointed to the NYPD and became a member of the PPF. (Petition; answer, exhibit 1.) From September 11, 2001, when he responded to the World Trade Center collapse, until November 2001, he participated in rescue and recovery operations, working more than 200 hours in total. (Petition; answer, exhibit 5.)
On September 17, 2001, petitioner filed a line of duty report, complaining of continuous nose bleeds and flu-like symptoms, and in September and November of 2001, he missed work due to these symptoms. (Petition, exhibit 1.) In a report prepared on November 3, 2004, petitioner was accused of sexual conduct, and on November 4, he was placed on modified assignment. (Answer, exhibits 2, 3.) On November 8, petitioner voluntarily resigned from the NYPD (petition; answer, exhibit 4), and never sought reinstatement. (Petition; answer.)
In 2009, petitioner’s symptoms worsened, and he began to experience gastrointestinal and respiratory problems. (Petition.) Shortly thereafter, he was diagnosed with sleep apnea, Barrett’s esophagus, chronic rhinitis, and gastroesophageal reflux disease. (Id., exhibits 6, 7, 8, 9.)
On December 4, 2009, petitioner submitted a “Notice of Participation in The World Trade Center Rescue, Recovery, or Clean-Up Operations.” (Answer, exhibit 5.) The notice provided, in pertinent part, that it “is for any active, vested or retired member who participated in the World Trade Center [rjescue, [rjecovery or [c]lean-up operations[,] ... is for notification purposes only[,] and does not constitute an application for retirement or reclassification.” (Id.) Handwritten notes on the notice, signed by a PPF employee and dated December 16, 2009, reflect that petitioner was informed that the PPF would not accept his notice. (Id.)
By letter dated February 16, 2010 and addressed to the PPF, petitioner stated, inter alia, that “he [had] received word from [the PPF] that [he] did not qualify to participate because [he] has resigned from the [NYPD].” (Id., exhibit 6.) By letter dated February 23, 2010, the PPF informed petitioner that his notice had been placed in his file “for future reference if needed.” (Pe *586 tition, exhibit 10.) By letter dated March 5, 2010, petitioner requested that the PPF provide him a written account of the reasons for the rejection of his notice to enable him to file an article 78 petition. (Answer, exhibit 7.)
By letter dated March 11, 2010, PPF informed petitioner that
“the law specifically refers to the fact that in order to file for disability you must be an active or retired member within a New York City or New York State [Retirement [s]ystem[, and] [a]s you are currently not a member of a New York City or New York State retirement system, by law you are ineligible to file disability benefits under WTC [legislation.” (Id., exhibit 8.)
By letter dated July 22, 2010, petitioner requested that the PPF reinstate him as an active member to enable him to file for an ADR pension under the WTC presumption. (Id., exhibit 9.) By separate letter of the same date, petitioner advised PPF that Administrative Code § 13-206 provides grounds for his reinstatement as a PPF member. (Id.)
By letter to petitioner dated August 10, 2010, the PPF explained that section 13-206 is inapplicable to him, that applications for reinstatement to the NYPD must be submitted within a year of resignation, and that “[p]eople who leave City service and are not members of any NYS [p]ublic [Retirement [s]ystem, for reasons other than death or retirement, are not eligible for benefits under [the WTC presumption].” (Id., exhibit 10.) By notice of petition dated August 14, 2010, petitioner brought an article 78 proceeding seeking an order allowing him to file for an ADR pension under the WTC presumption or Administrative Code § 13-206 (g) or compelling his reinstatement as an NYPD officer for the purpose of filing for an ADR pension. (Id., exhibit 11.) Court records reflect that on or about September 17, 2010, under the docket number assigned to his petition, petitioner filed a document entitled “Notice of Complaint Bill of Particulars in Relations to the Triable Issues of Personal Injuries of Article 78,” asserting personal injury claims arising out of September 11.
By notice of removal dated October 18, 2011, City removed the entire matter to the United States District Court for the Southern District of New York on the ground that petitioner’s personal injury claims were made pursuant to federal law. By order dated April 14, 2011, a judge of that court declined to exercise jurisdiction over petitioner’s pension-related claims, *587 without prejudice to his refiling of the petition in this court. By order dated June 27, 2011, the petition was restored here.
II. Contentions
Petitioner contends that he is entitled to file for an ADR pension pursuant to the WTC presumption, as he worked at the site and experienced disabling health problems as a result, the WTC presumption does not expressly exclude police officers who resigned from service, and the presumption was intended to benefit first responders regardless of whether they resigned after September 11. (Petition.) He also asserts that he is entitled to a hearing on his medical condition pursuant to Administrative Code § 13-206 (g) and to a “name clearing hearing” to remove the allegations of sexual misconduct from his record. (Id.) Moreover, he argues that, as he is a tier 2 employee and would thus be able to retain his membership in the PPF upon reinstatement, his employment should be reinstated so that he may apply for an ADR pension. (Id.) And he claims that the WTC presumption violates procedural process rights by depriving him of his property interest in his pension. (Id.)
In opposition, respondents maintain that the proceeding is untimely, as the original petition was filed more than four months after the PPF informed petitioner that it would not accept his notice, and in any event, that petitioner has no right to the relief he seeks, as Administrative Code § 13-252.1 refers to only active and retired members of the PPF, and section 13-206 (g) applies to members of the subchapter 1 PPF. (Respondent’s mem of law.) They also claim that petitioner is a tier 3 employee and that his due process rights were preserved by his filing of the instant proceeding. (Id.)
In reply, petitioner denies that his application is untimely, as article 78 proceedings seeking a judgment of mandamus must be filed within four months of an administrative agency’s refusal to perform the task sought to be compelled, and he filed his first petition four days after the PPF’s final letter. (Petitioner’s reply.) Moreover, he asserts that respondents have cited no legal authority for the proposition that he is not entitled to the relief he seeks, that he is a tier 2 employee, and that the devastating effects of denial of his application for an ADR pension should be considered. (Id.)
III. Analysis
A. Statute of Limitations
Pursuant to CPLR 217 (1), an article 78 proceeding must be commenced within four months after the challenged determina *588 tion becomes final and binding on petitioner. However, as an article 78 “proceeding seeking mandamus to compel accrues even in the absence of a final determination, . . . the statute of limitations for such a proceeding runs not from the final determination by the agency but from the date upon which the agency refuses to act.” (Ruskin Assoc., LLC v State of N.Y. Div. of Hous. & Community Renewal, 77 AD3d 401, 403 [1st Dept 2010]; see also Academy St. Assoc., Inc. v Spitzer, 44 AD3d 592, 593 [1st Dept 2007].)
Here, although the PPF first told petitioner that it would not accept his notice approximately eight months before he filed his petition, as petitioner seeks a judgment of mandamus, and as he filed his initial petition only four days after the PPF refused to grant his July 22, 2010 requests for a hearing and reinstatement, his application is timely.
B. Standard for Mandamus
Mandamus, an extraordinary remedy, is available “only to enforce a clear legal right where the public [agency or] official has failed to perform a duty enjoined by law.” (New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184 [2005].) The duty must be a “ministerial act. . . ‘premised upon specific statutory authority mandating performance in a specific manner’ . . . [and] [t]he right to performance ‘must be so clear as not to admit of reasonable doubt or controversy.’ ” (Matter of Grisi v Shainswit, 119 AD2d 418, 420 [1st Dept 1986].)
1. The WTC Presumption
The determination of an ADR application requires two considerations. (Matter of Borenstein v New York City Employees’ Retirement Sys., 88 NY2d 756, 760 [1996].) First, the PPF Medical Board decides whether the applicant is disabled and if so, whether the disability resulted from a service-related accident, certifying its determination to the PPF Board of Trustees. (Id.) Second, the Board of Trustees makes its own determination of causation. (Id.)
Pursuant to the pertinent portion of the WTC presumption:
“if any condition or impairment of health is caused by a qualifying World Trade Center condition . . . , it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by such member’s own willful negligence, *589 unless the contrary be proved by competent evidence . . .
“if a member who participated in World Trade Center rescue, recovery or cleanup operations . . . subsequently retired . . . and subsequent to such retirement is determined ... to have a qualifying World Trade Center condition . . . , it shall be presumed that such disability was incurred in the performance and discharge of duty as the natural and proximate result of an accident not caused by such member’s own willful negligence.” (Administrative Code § 13-252.1 [1] [a]; [2] [a].)
Pursuant to Administrative Code § 13-214 (4), a member is “any person included in the membership of the [PPF],” or “all persons in city-service” (Administrative Code § 13-215 [a]).
Here, although Administrative Code § 13-252.1 does not expressly exclude police officers who have resigned from service, its beneficiaries are pension fund members only, not officers who have resigned (see Administrative Code §§ 13-214, 13-215), and as it includes an exception for retired officers only, it may be deemed to exclude officers who have resigned, even if they worked at the World Trade Center. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 240 [“(W)here a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned.”].)
And, absent any authority for the proposition that an officer to whom the WTC presumption does not apply is nevertheless legally entitled to review of his application for an ADR pension or to reinstatement as an NYPD officer for the purposes of same, petitioner has failed to demonstrate a clear legal right to the relief he seeks. Although it is regrettable that a first responder who has resigned is not entitled to the benefits given those who have retired, the Legislature’s distinction between the two classes cannot be ignored.
In light of this determination, the parties’ contentions as to whether petitioner is a tier 2 employee need not be addressed.
2. Administrative Code § 13-206 (g)
There exist two PPFs: the subchapter 1 fund for officers who were serving as of March 29, 1940, and the subchapter 2 fund, which is for officers whose service began thereafter. (Ballentine v Koch, 89 NY2d 51, 54 n 1 [1996].) The subchapter 1 fund is governed by Administrative Code §§ 13-201 to 13-213.1, whereas *590 the subchapter 2 fund is governed by Administrative Code §§ 13-214 to 13-267.1.
As Administrative Code § 13-206 (g) pertains to the subchapter 1 fund, it is inapplicable to petitioner and provides no ground for a hearing.
C. Procedural Due Process Claim
“ ‘Procedural due process imposes constraints on governmental decisions which deprive individuals of “liberty” or “property” interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.’ ” (Curíale v Ardra Ins. Co., 88 NY2d 268, 274 [1996].)
“Property interests are not created by the Constitution, but rather ‘by existing rules or understandings that stem from an independent source such as state law’ ... In considering whether a right is granted by State law, the focus is on the relevant statute, regulation, or contract establishing eligibility for the benefit at issue.” (Matter of Medicon Diagnostic Labs, v Perales, 74 NY2d 539, 545 [1989].)
Absent any statute or contract providing that police officers who have resigned and are no longer members of the PPF have a property interest in an ADR pension, petitioner’s procedural due process claim is without merit.
D. Request for a Name-Clearing Hearing
As petitioner had not submitted a request to respondents for a name-clearing hearing, they may not be compelled to do so by way of a judgment of mandamus. (See supra, III [B].)
IV Conclusion
Accordingly, it is hereby ordered, that the proceeding is denied in its entirety and the petition is dismissed.