# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1232**

**CA 13-02197**

PRESENT: SCUDDER, P.J., PERADOTTO, LINDLEY, SCONIERS, AND VALENTINO,

---

IN THE MATTER OF ADIRONDACK HEALTH-UIHLEIN
LIVING CENTER, ET AL.,
PETITIONERS-PLAINTIFFS-RESPONDENTS,

V                                                    MEMORANDUM AND ORDER

NIRAV R. SHAH, M.D., COMMISSIONER OF HEALTH,
STATE OF NEW YORK, ROBERT L. MEGNA, AS DIRECTOR
OF BUDGET, AND ANDREW M. CUOMO, GOVERNOR, STATE
OF NEW YORK, RESPONDENTS-DEFENDANTS-APPELLANTS.

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (VICTOR PALADINO OF
COUNSEL), FOR RESPONDENTS-DEFENDANTS-APPELLANTS.

HARTER SECREST & EMERY LLP, ROCHESTER (F. PAUL GREENE OF COUNSEL), FOR
PETITIONERS-PLAINTIFFS-RESPONDENTS.

---------------------------------------------------------------------------------------------------------

        Appeal, by permission of the Appellate Division of the Supreme
Court in the Fourth Judicial Department, from an order of the Supreme
Court, Monroe County (John J. Ark, J.), entered November 20, 2013 in a
CPLR article 78 proceeding and declaratory judgment action.  The
order, insofar as appealed from, granted those parts of the amended
petition seeking to prohibit respondents-defendants from enforcing 10
NYCRR 86-2.40 (m) (10).

        It is hereby ORDERED that the order insofar as appealed from is
unanimously reversed on the law without costs and those parts of the
amended petition seeking to prohibit respondents-defendants from
enforcing 10 NYCRR 86-2.40 (m) (10) are dismissed.

        Memorandum:  Petitioners commenced this CPLR article 78
proceeding seeking to compel respondents to reimburse them for
Medicaid payments owed to them pursuant to 10 NYCRR 86-2.40 (m) (10),
and challenging "the legality and constitutionality" of that
regulation "both facially and as applied" to them.  Supreme Court
granted the petition and determined that respondents' enforcement of
the regulation is "arbitrary and capricious and otherwise unlawful
under both state and federal law."  We granted respondents'
application for leave to appeal from the interlocutory order (*see* CPLR
5701 [b] [1]; [c]), and we now reverse the order insofar as appealed
from.

        We note at the outset that a CPLR article 78 proceeding is not
the proper vehicle for that part of petitioners' challenge to the

facial unconstitutionality of the regulation, and we thus convert the article 78 proceeding to a hybrid article 78 proceeding/declaratory judgment action (*see* CPLR 103 [c]; *92-07 Rest. v New York State Liq. Auth.*, 80 AD2d 603, 604; *see generally Matter of Kovarsky v Housing & Dev. Admin. of City of N.Y.*, 31 NY2d 184, 191).

Petitioners-plaintiffs (hereafter, petitioners) are 80 residential health care facilities, as defined in Public Health Law § 2801 (3), that participate in the Medicaid program (*see* 42 USC § 1396 *et seq.*). The Medicaid reimbursement rates for residential health care facilities are "calculated, in part, on the individual facility's 'case mix,' which . . . correspond[s] roughly to the severity of the patients' illnesses and the intensity of the required care" (*Matter of Jewish Home & Infirmary of Rochester v Commissioner of N.Y. State Dept. of Health*, 84 NY2d 252, 257) and, "as a facility's case mix index increases, so does its reimbursement rate" (*Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 544, *rearg denied* 7 NY3d 922).

In January 2013, the New York State Department of Health (DOH) adopted a regulation providing that, in the event that a facility reported an increase in its case mix index (CMI) of greater than five percent, "the impact of the payment of the Medicaid rate adjustment attributable to such a change in the reported case mix may be limited to reflect no more than a five percent change in such reported data, pending a prepayment audit of such reported . . . data" (10 NYCRR 86-2.40 [m] [10]; *see* NY Reg, Jan. 2, 2013, at 16). Respondents-defendants (hereafter, respondents) concede that, after the regulation was promulgated, DOH began withholding from petitioners all reimbursements attributable to any increase in case mix. As limited by their brief, respondents do not appeal from that part of the order directing them to pay case mix adjustments up to the five percent threshold.

We agree with respondents that DOH had statutory authority to promulgate 10 NYCRR 86-2.40 (m) (10) under Public Health Law § 2808 (2-c) (d) and that the regulation was not " 'out of harmony' with an applicable statute" (*Weiss v City of New York*, 95 NY2d 1, 5, quoting *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471, 480-481). Although section 2808 (2-c) (d) does not explicitly authorize prepayment audits of residential health care facilities, "an agency can adopt regulations that go beyond the text of that legislation, provided that they are not inconsistent with the statutory language or its underlying purposes" (*Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.*, 2 NY3d 249, 254). Moreover, we reject petitioners' contention that DOH usurped the role of the legislature by adopting 10 NYCRR 86-2.40 (m) (10). DOH has "inherent authority to protect the quality and value of services rendered by [Medicaid] providers" (*Matter of Medicon Diagnostic Labs. v Perales*, 74 NY2d 539, 545) and, therefore, we conclude that DOH did not "stretch[ ] [the enabling statute] beyond its constitutionally valid reach" by adopting a regulation that allows a prepayment audit of Medicaid claims under certain circumstances

(*Boreali v Axelrod*, 71 NY2d 1, 9; *see generally Ellicott Group, LLC v State of N.Y. Exec. Dept. Off. of Gen. Servs.*, 85 AD3d 48, 53-54).

We further agree with respondents that 10 NYCRR 86-2.40 (m) (10) "has a rational basis and is not unreasonable, arbitrary or capricious" (*Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health*, 85 NY2d 326, 331). Contrary to petitioners' contention, DOH is not required to rely upon empirical studies when it adopts a regulation. "Although documented studies often provide support for an agency's rule making, such studies are not the *sine que non* of a rational determination" (*id.* at 332). Thus, "the commissioner [of DOH] . . . is not confined to factual data alone but also may apply broader judgmental considerations based upon the expertise and experience of the agency he [or she] heads" (*Matter of Catholic Med. Ctr. of Brooklyn & Queens v Department of Health of State of N.Y.*, 48 NY2d 967, 968-969). Here, DOH adopted 10 NYCRR 86-2.40 (m) (10) to "[e]nsure the accuracy and integrity of Medicaid rates that are adjusted for case mix data" (NY Reg, Jan. 2, 2013, at 16), and we conclude that adoption of the regulation was within DOH's authority in order to " 'assure[] that the funds which have been set aside for (providing medical services to the needy) will not be fraudulently diverted into the hands of an untrustworthy provider of services' " (*Medicon Diagnostic Labs.*, 74 NY2d at 545, quoting *Schaubman v Blum*, 49 NY2d 375, 379).

Petitioners contend that respondents acted arbitrarily and capriciously in adopting 10 NYCRR 86-2.40 (m) (10) because regulations previously adopted by DOH served the same purpose. We reject that contention. Although there are other regulations concerning audits of claims for Medicaid reimbursement in other contexts (*see* 10 NYCRR 86-2.40 [m] [8]; *see also* 10 NYCRR 86-2.7), we conclude that they do not render the prepayment audit provision in the challenged regulation arbitrary and capricious (*see generally Matter of Jennings v New York State Off. of Mental Health*, 90 NY2d 227, 239). Contrary to petitioners' further contention, we conclude that the regulation challenged herein "provides an adequate objective, intelligible standard for administrative action" (*Matter of Big Apple Food Vendors' Assn. v Street Vendor Review Panel*, 90 NY2d 402, 408).

We agree with respondents that petitioners do not have standing to challenge 10 NYCRR 86-2.40 (m) (10) under federal law on the ground that it is a material change to the New York State Medicaid Plan. States participating in the Medicaid program must produce a Medicaid Plan (*see* 42 USC § 1396a; Social Services Law § 363-a [1]), and must "amend [the] plan and submit it for federal approval . . . to reflect '[m]aterial changes in State law, organization, or policy, or in the State's operation of the Medicaid program' " (*New Jersey Primary Care Assn., Inc. v New Jersey Dept. of Human Servs.*, 722 F3d 527, 538, quoting 42 CFR 430.12 [c] [1] [ii]). Under federal law, however, health care providers "lack a private right of action to enforce the requirement of federal approval of state plan amendments" (*New Jersey Primary Care Assn., Inc.*, 722 F3d at 539; *see generally Community Health Care Assn. of N.Y. v Shah*, 770 F3d 129, 148).

Petitioners contend that Social Services Law § 363-a confers a private right of action upon residential health care facilities under state law.  We reject that contention because "[r]ecognition of a private cause of action in favor of [petitioners] based upon [respondents'] alleged violation of the statute . . . would not be consistent with the legislative scheme" (*Yates v Genesee County Hospice Found.*, 278 AD2d 928, 929, *lv denied* 96 NY2d 714; *see generally Sheehy v Big Flats Community Day*, 73 NY2d 629, 633).

We agree with respondents that 10 NYCRR 86-2.40 (m) (10) does not violate petitioners' rights to substantive due process.  Even assuming, arguendo, that petitioners have "a cognizable property interest" in receiving Medicaid reimbursements prior to an audit (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627), we conclude that petitioners failed to establish that "there is absolutely no reasonable relationship to be perceived between the regulation and the achievement of a legitimate governmental purpose" (*Brightonian Nursing Home v Daines*, 21 NY3d 570, 576).  Respondents have a legitimate governmental purpose of assuring that Medicaid funds " 'will not be fraudulently diverted into the hands of an untrustworthy provider of services' " (*Medicon Diagnostic Labs.*, 74 NY2d at 545, quoting *Schaubman*, 49 NY2d at 379), and a regulation requiring a prepayment audit of certain Medicaid claims is reasonably related to that purpose (*see generally Brightonian Nursing Home*, 21 NY3d at 576).

Contrary to petitioners' further contention, 10 NYCRR 86-2.40 (m) (10) does not violate their right to procedural due process.  Again, even assuming, arguendo, that petitioners have a constitutionally protected property interest in receiving Medicaid reimbursements prior to an audit, we conclude that the regulation "adequately safeguard[s] the private interests of petitioners, and minimize[s] the risk of erroneous deprivation while serving the substantial government interest in safeguarding the integrity of the Medicaid program" (*Medicon Diagnostic Labs.*, 74 NY2d at 547).

Petitioners contend that 10 NYCRR 86-2.40 (m) (10) violates their right to equal protection on the ground that there is no rational basis for distinguishing between facilities reporting an increase in CMI of greater than five percent from facilities reporting an increase that falls below that threshold.  We reject that contention.  As the proponents of an equal protection claim, petitioners had the burden of demonstrating that the implementation of a five percent threshold "lacks a rational basis" (*Bay Park Ctr. for Nursing & Rehabilitation, LLC v Shah*, 111 AD3d 1227, 1230; *see generally Port Jefferson Health Care Facility v Wing*, 94 NY2d 284, 290).  We conclude, however, that petitioners failed to meet that burden (*see Montgomery v Daniels*, 38 NY2d 41, 64-65).

Finally, we conclude that respondents did not improperly apply 10 NYCRR 86-2.40 (m) (10) retroactively (*see generally Forti v New York State Ethics Commn.*, 75 NY2d 596, 608-609).

Entered:  February 6, 2015                    Frances E. Cafarell
                                              Clerk of the Court