# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**399**

**CA 11-01861**

PRESENT: SMITH, J.P., PERADOTTO, CARNI, AND SCONIERS, JJ.

---

THE BRIGHTONIAN NURSING HOME, BAYBERRY NURSING
HOME, MAPLEWOOD NURSING AND REHABILITATION CENTER,
LEROY VILLAGE GREEN, ELDERWOOD HEALTH CARE AT
BIRCHWOOD AND NEW YORK STATE HEALTH FACILITIES
ASSOCIATION, INDIVIDUALLY AND ON BEHALF OF ITS
RESIDENTIAL HEALTH CARE FACILITY MEMBERS IN NEW
YORK STATE, PLAINTIFFS-PETITIONERS-RESPONDENTS,

                   V                       MEMORANDUM AND ORDER

RICHARD F. DAINES, M.D., COMMISSIONER OF HEALTH,
STATE OF NEW YORK AND DAVID A. PATERSON,
GOVERNOR, STATE OF NEW YORK,
DEFENDANTS-RESPONDENTS-APPELLANTS.

---

ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (VICTOR PALADINO OF
COUNSEL), FOR DEFENDANTS-RESPONDENTS-APPELLANTS.

HARTER SECREST & EMERY LLP, ROCHESTER (THOMAS G. SMITH OF COUNSEL),
FOR PLAINTIFFS-PETITIONERS-RESPONDENTS.

---

     Appeal from a judgment (denominated order and judgment) of the
Supreme Court, Monroe County (Matthew A. Rosenbaum, J.), entered
November 10, 2010 in a CPLR article 78 proceeding and a declaratory
judgment action.  The judgment denied the cross motion of defendants-
respondents, inter alia, to dismiss the amended complaint/petition and
declared unconstitutional Public Health Law § 2808 (5) (c).

     It is hereby ORDERED that the judgment so appealed from is
unanimously affirmed without costs.

     Memorandum: Plaintiffs-petitioners (plaintiffs) commenced this
hybrid CPLR article 78 proceeding and declaratory judgment action
seeking, inter alia, a declaration that the version of Public Health
Law § 2808 (5) (c) in effect at that time was unconstitutional on its
face.  We note at the outset that this is properly only a declaratory
judgment action inasmuch as plaintiffs challenge the constitutionality
of a statute, rather than the specific action of the administrative
agency (*see Greece Town Mall, LP v Mullen*, 87 AD3d 1408, 1408).
Supreme Court denied the cross motion of defendants-respondents
(defendants), inter alia, to dismiss the amended complaint/petition
pursuant to CPLR 3211 (a) (7) and entered judgment in favor of
plaintiffs declaring that Public Health Law § 2808 (5) (c) is
unconstitutional.  We affirm.

It is well settled that "[l]egislative enactments enjoy a strong presumption of constitutionality" (*LaValle v Hayden*, 98 NY2d 155, 161; *see Schulz v State of New York*, 84 NY2d 231, 241, *rearg denied* 84 NY2d 851, *cert denied* 513 US 1127). Where, as here, the challenge is to a statute on its face, the challenger "bears the substantial burden of demonstrating that in any degree and in every conceivable application, the law suffers wholesale constitutional impairment" (*Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 448 [internal quotation marks omitted]; *see Cohen v State of New York*, 94 NY2d 1, 8). In this case, we conclude that plaintiffs met the heavy burden of establishing the unconstitutionality of Public Health Law § 2808 (5) (c) beyond a reasonable doubt (*see generally Bordeleau v State of New York*, 18 NY3d 305, 313, *rearg denied* ___ NY3d ___ [Feb. 21, 2012]; *Matter of New York Charter Schools Assn., Inc. v DiNapoli*, 13 NY3d 120, 130; *Schulz*, 84 NY2d at 241).

Public Health Law § 2808 (5) (c) prohibits private residential health care facilities, i.e., nursing homes, from withdrawing equity or transferring assets that in the aggregate exceed 3% of their total annual revenue for patient care services without the prior written approval of the Commissioner of Health (Commissioner). The statute affords the Commissioner 60 days to determine whether to approve a request for withdrawal of equity or assets (*see id.*). In reviewing such requests, the statute provides that the Commissioner "shall consider the facility's overall financial condition, any indications of financial distress, whether the facility is delinquent in any payment owed to the [D]epartment [of Health], whether the facility has been cited for immediate jeopardy or substandard quality of care, and such other factors as the [C]ommissioner deems appropriate" (*id.*).

Contrary to defendants' contention, we conclude that Public Health Law § 2808 (5) (c) as written is unconstitutionally vague and improperly delegates legislative authority to the Commissioner. It is axiomatic that "the legislative branch may not constitutionally cede its fundamental policymaking responsibility to a regulatory agency" (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 864; *see Boreali v Axelrod*, 71 NY2d 1, 9-10; *see also Matter of Citizens For An Orderly Energy Policy v Cuomo*, 78 NY2d 398, 410, *rearg denied* 79 NY2d 851, 852). Thus, "[t]he Legislature may constitutionally confer discretion upon an administrative agency only if it limits the field in which that discretion is to operate and provides standards to govern its exercise" (*Matter of Levine v Whalen*, 39 NY2d 510, 515). We agree with plaintiffs and the court that the provision in Public Health Law § 2808 (5) (c) permitting the Commissioner to consider "such other factors as [he or she] deems appropriate" (hereafter, catchall provision) constitutes an unconstitutional delegation of legislative authority because it grants the Commissioner unfettered discretion in assessing equity withdrawal requests. The statute provides no standards to guide the Commissioner in determining what factors are "appropriate" in reviewing such requests (§ 2808 [5] [c]; *see generally Dur-Bar Realty Co. v City of Utica*, 57 AD2d 51, 55, *affd* 44 NY2d 1002; *Levine*, 39 NY2d at 515). As a result, it is left to the sole discretion of the Commissioner to determine which additional factors to consider.

Defendants contend that the catchall provision is properly construed not as conferring unlimited discretion upon the Commissioner, but rather as allowing the Commissioner to consider other factors of the same type or kind as the first four factors listed in the statute, i.e., factors relating to the nursing home's financial condition and quality of care.  In support of that contention, defendants rely on the ejusdem generis rule of statutory construction, which "requires the court to limit general language of a statute by specific phrases which have preceded the general language" (McKinney's Cons Laws of NY, Book 1, Statutes § 239 [b], at 407; *see 242-44 E. 77th St., LLC v Greater N.Y. Mut. Ins. Co.*, 31 AD3d 100, 103-104).  The rule of ejusdem generis, however, "applies only where the specific words preceding the general expression are all of the same nature, and where they are of different genera the meaning of the general words remains unaffected by its connection with them . . . [I]n applying the rule, care must be taken to see that the words supposed to be particular or specific, and which precede the general term, really are an enumeration of individual things, for if the preceding terms are general as well as that which follows, there is no place for the application of the rule" (§ 239 [b], at 409).  Here, the preceding factors are general in nature and are not all of the same kind or type (*see* Public Health Law § 2808 [5] [c]; McKinney's Cons Laws of NY, Book 1, Statutes § 239 [b], at 409).  Thus, ejusdem generis does not apply to circumscribe the otherwise limitless discretion the statute affords to the Commissioner (*cf. Miranda v Norstar Bldg. Corp.*, 79 AD3d 42, 47).

We also agree with plaintiffs and the court that the catchall provision of Public Health Law § 2808 (5) (c) is unconstitutionally vague (*see Russell v Town of Pittsford*, 94 AD2d 410, 414), inasmuch as it does not " 'contain[] sufficient standards to afford a reasonable degree of certainty so that a person of ordinary intelligence is not forced to guess at its meaning and to safeguard against arbitrary enforcement' " (*Matter of Morrissey v Apostol*, 75 AD3d 993, 996; *see Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235, 256, *cert denied* 131 S Ct 822).  Because the Commissioner may consider "such other factors as [he or she] deems appropriate" (§ 2808 [5] [c]), the statute does not adequately apprise nursing home owners and operators of the standards used to assess their equity withdrawal requests and precludes meaningful judicial review (*cf. Matter of Slocum v Berman*, 81 AD2d 1014, 1015-1016, *lv denied* 54 NY2d 602, *appeal dismissed* 54 NY2d 752).

Although defendants contend that we may sever the catchall provision and otherwise leave the statute intact (*see generally St. Joseph Hosp. of Cheektowaga v Novello*, 43 AD3d 139, 146, *appeal dismissed* 9 NY3d 988, *lv denied* 10 NY3d 702), we agree with plaintiffs and the court that Public Health Law § 2808 (5) (c), in its entirety, violates substantive due process.  "To establish a claim for violation of substantive due process, a party 'must establish a cognizable . . . vested property interest' . . . and 'that the governmental action was wholly without legal justification' " (*Matter of Raynor v Landmark Chrysler*, 18 NY3d 48, 59; *see Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 627).  With respect to the first part of that test, we

conclude that plaintiffs have a vested property interest in the equity of their businesses and the disposition of that valuable asset (*see generally Dickman v Commissioner of Internal Revenue*, 465 US 330, 336, *reh denied* 466 US 945; *Federal Home Loan Mtge. Corp. v Commissioner of Internal Revenue*, 121 TC 254, 259-260; *Passailaigue v United States*, 224 F Supp 682, 686).  As the United States Supreme Court stated, "the use of valuable property[, including money] is itself a legally protectible property interest.  Of the aggregate rights associated with any property interest, the right of use of property is perhaps of the highest order" (*Dickman*, 465 US at 336).

With respect to the second part of the test for a substantive due process claim, plaintiffs must demonstrate that the statutory provision at issue is "without legal justification and not supported by a rational legislative purpose" (*Raynor*, 18 NY3d at 59).  As plaintiffs correctly concede, ensuring the financial viability of nursing homes and protecting the welfare of their vulnerable residents constitutes a legitimate governmental purpose (*see generally Port Jefferson Health Care Facility v Wing*, 94 NY2d 284, 292, *cert denied* 530 US 1276; *Matter of Hodes v Axelrod*, 70 NY2d 364, 371-372; *Village of Herkimer v Axelrod*, 88 AD2d 704, 706, *affd* 58 NY2d 1069).

The question therefore becomes whether Public Health Law § 2808 (5) (c) bears a reasonable relationship to the objective of safeguarding a nursing home's finances for the protection of its residents (*see Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y.*, 71 NY2d 313, 321; *Montgomery v Daniels*, 38 NY2d 41, 54; *Russell*, 94 AD2d at 412-413).  "The Federal and State Due Process Clauses condition government regulation by requiring that it not be unreasonable, arbitrary or capricious, and that the means selected have a reasonable relation to the object sought to be attained" (*Rochester Gas & Elec. Corp.*, 71 NY2d at 321).  We agree with plaintiffs and the court that section 2808 (5) (c) is not reasonably related to the governmental purpose and thus that it violates due process (*see generally Fred F. French Inv. Co. v City of New York*, 39 NY2d 587, 596, *rearg denied* 40 NY2d 846, *appeal dismissed and cert denied* 429 US 990).

Public Health Law § 2808 (5) (c) requires all nursing homes, regardless of financial viability, to obtain the approval of the Commissioner for all expenditures that, in the aggregate in a given year, exceed 3% of their annual revenue from patient care.  We conclude that it is manifestly unfair and unreasonable to freeze the equity of all nursing homes in excess of 3% of their respective annual revenues in order to protect nursing home residents and the public from the possibility that "unscrupulous or incompetent owners [will] place their facilities in a financially unsound position by withdrawing excessive amounts of working capital" (Budget Report on Bills, Bill Jacket, L 1977, ch 521).  We note that subdivision (5) (a) of section 2808 provides that "[a]ny operator withdrawing equity or assets from a hospital operated for profit so as to create or increase a negative net worth or when the hospital is in a negative net worth position . . . must obtain the prior approval of the [C]ommissioner . . . ."  Subdivision (5) (b) further provides that no nursing home

facility "may withdraw equity or transfer assets which in the aggregate exceed [3%] of such facility's total reported annual revenue for patient care services . . . without prior written notification to the [C]ommissioner."  In our view, those subdivisions sufficiently protect nursing home residents and the public from excessive withdrawals of equity that may endanger a nursing home's financial health.  We conclude that subdivision (5) (c) sweeps so broadly as to be irrational and arbitrary in view of the objective to be accomplished, i.e., ensuring the financial viability of nursing homes for the protection of their residents (*see generally Rochester Gas & Elec. Corp.*, 71 NY2d at 321; *Fred F. French Inv. Co.*, 39 NY2d at 596).

Entered:  March 23, 2012                          Frances E. Cafarell
                                                  Clerk of the Court