[999 NE2d 510, 977 NYS2d 147]

Brightonian Nursing Home et al., Respondents, v Richard F. Daines, M.D., Commissioner of Health, State of New York, et al., Appellants.

Argued September 11, 2013; decided October 15, 2013

## POINTS OF COUNSEL

*Eric T. Schneiderman, Attorney General,* Albany (*Victor Paladino, Barbara D. Underwood* and *Andrew D. Bing* of counsel), for appellants. I. Plaintiffs' challenge is a facial one and they failed to satisfy the stringent requirements for a facial challenge. (*Matter of Moran Towing Corp. v Urbach,* 99 NY2d 443.) II. Public Health Law § 2808 (5) (c) is a constitutional delegation of authority to the Commissioner of Health and is not void

for vagueness. (*Boreali v Axelrod*, 71 NY2d 1; *Matter of Levine v Whalen*, 39 NY2d 510; *Matter of Big Apple Food Vendors' Assn. v Street Vendor Review Panel*, 90 NY2d 402; *LaValle v Hayden*, 98 NY2d 155; *Miranda v Norstar Bldg. Corp.*, 79 AD3d 42; *Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd.*, 51 NY2d 506; *People v Illardo*, 48 NY2d 408; *Circuit City Stores, Inc. v Adams*, 532 US 105; *Federal Maritime Comm'n v Seatrain Lines, Inc.*, 411 US 726; *Matter of Kaur v New York State Urban Dev. Corp.*, 15 NY3d 235.) III. The statute does not deprive plaintiffs of substantive due process. (*Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y.*, 71 NY2d 313; *Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617; *Matter of Raynor v Landmark Chrysler*, 18 NY3d 48; *Ferran v Town of Nassau*, 471 F3d 363; *Concrete Pipe & Products of Cal., Inc. v Construction Laborers Pension Trust for Southern Cal.*, 508 US 602; *Usery v Turner Elkhorn Mining Co.*, 428 US 1; *Montgomery v Daniels*, 38 NY2d 41; *Pharmaceutical Mfrs. Assn. v Whalen*, 54 NY2d 486; *Louisville Gas & Elec. Co. v Coleman*, 277 US 32.)

*Harter Secrest & Emery LLP*, Rochester (*Thomas G. Smith, F. Paul Greene* and *John P. Bringewatt* of counsel), for respondents. I. Public Health Law § 2808 (5) (c) violates substantive due process. (*Fenster v Leary*, 20 NY2d 309; *People v Bunis*, 9 NY2d 1; *Gannett Co. v City of Rochester*, 69 Misc 2d 619; *People v New York Carbonic Acid Gas Co.*, 196 NY 421; *People v Faxlanger*, 1 AD2d 92; *Brandeis School v Village of Lawrence*, 18 Misc 2d 550; *Matter of Wulfsohn v Burden*, 241 NY 288; *Buffalo Teachers Fedn. v Tobe*, 464 F3d 362; *Dickman v Commissioner*, 465 US 330; *Dolan v City of Tigard*, 512 US 374.) II. Public Health Law § 2808 (5) (c) is an improper delegation of legislative authority. (*Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854; *Matter of Levine v Whalen*, 39 NY2d 510; *City of Tonawanda v Tonawanda Theater Corp.*, 29 AD2d 217; *Matter of City of Utica v Water Pollution Control Bd.*, 5 NY2d 164; *Packer Coll. Inst. v University of State of N.Y.*, 298 NY 184; *Boreali v Axelrod*, 71 NY2d 1; *Matter of Koelbl v Whalen*, 63 AD2d 408; *Matter of Timber Point Homes v County of Suffolk*, 155 AD2d 671; *Long Is. Coll. Hosp. v Whalen*, 68 AD2d 274; *Miranda v Norstar Bldg. Corp.*, 79 AD3d 42.) III. Public Health Law § 2808 (5) (c) is void for vagueness. (*Grayned v City of Rockford*, 408 US 104; *Connally v General Constr. Co.*, 269 US 385; *Kolender v Lawson*, 461 US 352; *National Endowment for Arts v Finley*, 524 US 569.) IV. Public Health Law § 2808 (5) (c) provides no procedural due process. (*Goss v Lopez*, 419 US 565;

*Joint Anti-Fascist Refugee Comm. v McGrath*, 341 US 123; *Curiale v Ardra Ins. Co.*, 88 NY2d 268; *Matter of Slocum v Berman*, 81 AD2d 1014; *Matter of Timber Point Homes v County of Suffolk*, 155 AD2d 671; *Matter of Sunset Nursing Home v De-Buono*, 24 AD3d 927.) V. Public Health Law § 2808 (5) (c) is an improper prior restraint of speech and therefore violative of the First Amendment to the United States Constitution. (*Buckley v Valeo*, 424 US 1.) VI. Public Health Law § 2808 (5) (c) impairs obligations of preexisting contracts. (*General Motors Corp. v Romein*, 503 US 181; *Allied Structural Steel Co. v Spannaus*, 438 US 234; *United States Trust Co. of N. Y. v New Jersey*, 431 US 1; *19th St. Assoc. v State of New York*, 79 NY2d 434.) VII. Public Health Law § 2808 (5) (c) violates the Equal Protection Clause. (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617; *Cleburne v Cleburne Living Center, Inc.*, 473 US 432; *New York State Assn. of Counties v Axelrod*, 78 NY2d 158.) VIII. The "such other factors" clause of Public Health Law § 2808 (5) (c) is not severable. (*CWM Chem. Servs., L.L.C. v Roth*, 6 NY3d 410; *Anonymous v City of Rochester*, 13 NY3d 35.) IX. There is no reported case applying New York law that upholds a provision such as Public Health Law § 2808 (5) (c). (*Gannett Co. v City of Rochester*, 69 Misc 2d 619; *City of Tonawanda v Tonawanda Theater Corp.*, 29 AD2d 217; *New York State Assn. of Counties v Axelrod*, 78 NY2d 158; *Matter of Levine v Whalen*, 39 NY2d 510; *A. L. A. Schechter Poultry Corp. v United States*, 295 US 495.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

Before us on this appeal as of right pursuant to CPLR 5601 (d) is a challenge to the facial constitutionality of Public Health Law § 2808 (5) (c). That provision, in its present form enacted in 2010 as this case was being litigated in Supreme Court (L 2010, ch 109, part B, § 36), prohibits the withdrawal or transfer of residential health care facility equity or assets in an aggregate amount exceeding three percent of the facility's most recently reported annual revenue from patient care services, without the prior approval of the State Commissioner of Health:[1]

---

1. An earlier version of the statute (L 2009, ch 58, part D, § 11) required pre-approval of asset/equity withdrawal when the amount involved equaled or exceeded three percent of the facility's total annual Medicaid revenue. The statute's amendment was evidently responsive to the facility owners' contention that Medicaid revenue is not a reliable index of a facility's financial

*(n. cont'd)*

"The commissioner shall make a determination to approve or disapprove a request for withdrawal of equity or assets under this subdivision within sixty days of the date of the receipt of a written request from the facility . . . In reviewing such requests the commissioner shall consider the facility's overall financial condition, any indications of financial distress, whether the facility is delinquent in any payment owed to the department, whether the facility has been cited for immediate jeopardy or substandard quality of care, and such other factors as the commissioner deems appropriate."

Nursing homes serve a particularly needy and vulnerable clientele and are largely compensated with public funds. Preserving their financial viability and capacity to provide care and treatment at mandated levels is thus a proper and uncontroversial subject of legislative concern. The particular concern addressed by the presently challenged enactment—that precipitous withdrawals of substantial facility equity or assets for nonfacility purposes may impair facility operations and thus occasion detriment to the welfare of an utterly reliant resident population—is not new. Public Health Law § 2808 (5) (c) is only the most recent of several restrictions on the alienation of facility equity and assets contained in Public Health Law § 2808. Subdivision (5) (a), enacted in 1977 (L 1977, ch 521, § 1), requires an operator to obtain permission for the withdrawal of facility assets or equity when the facility is in a negative net worth position or when the withdrawal would give rise to such a position, and, as amended in 1984 to address widespread noncompliance with the pre-approval requirement, contains a clawback provision (L 1984, ch 969, § 6). Subdivision (5) (b), enacted in 2008 (L 2008, ch 58, part C, § 72, as amended by L 2008, ch 57, part OO, § 12) extended the Commissioner's oversight of facility asset/equity withdrawals to facilities in positive equity positions, by requiring across-the-board prior written notification of any withdrawal or transfer of facility equity or assets exceeding in the aggregate three percent of the facility's most recently reported annual revenue from patient care services. The presently challenged provision, subdivision

health and that the use of Medicaid revenue as a basis for determining the extent of their unconditioned access to facility assets or equity was unduly restrictive. While the amendment made significantly larger, unpreapproved withdrawals possible, it was ultimately unsatisfactory to plaintiffs who amended their complaint to target the substituted pre-approval requirement.

(5) (c), constitutes a further extension of the same regulatory agenda, adding a pre-approval requirement for any withdrawal for which notice would be required under subdivision (5) (b). Read in context, subdivision (5) (c) targets facilities that, although already subject to subdivision (5) (b)'s pre-withdrawal written notification requirement, were not previously subject to a pre-withdrawal approval requirement.

In granting plaintiffs summary judgment, declaring section 2808 (5) (c) facially unconstitutional, Supreme Court reasoned that the statute's use of the catch-all phrase "and such other factors as the commissioner deems appropriate" afforded the Commissioner unbridled discretion to deny withdrawal/transfer applications, and in so doing impermissibly ceded legislative policy-making power to a regulatory agency situated in the executive branch (*see Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854, 864 [2003]). The court also faulted the statute for infringing the substantive due process property interests of facility owners; subdivision (5) (c), it said, was not rationally related to any end that might be achieved through the State's police power.

The Appellate Division agreed that the statute's catch-all provision impermissibly surrendered legislative policy-making power (93 AD3d 1355, 1358 [2012]). And, while noting defendants' contention that the catch-all, if deemed constitutionally offensive, could be severed without compromising the essential legislative design, the court was of the view that severance was incapable of saving the statute because the enactment as a whole violated substantive due process (93 AD3d at 1359). The court did not question the governmental purpose for the statute—namely, ensuring the financial viability of nursing homes and protecting the welfare of their vulnerable residents—but was unable to discern a reasonable relationship between that purpose and the means prescribed, which it said "swe[pt] so broadly as to be irrational and arbitrary in view of the objective to be accomplished" (*id.* at 1360). In the court's view, protecting the financial viability of nursing homes and the welfare of their residents was sufficiently assured by Public Health Law § 2808 (5) (a) and (b).

▮ The lower courts, we believe, erred in concluding that the subject statute was offensive to substantive due process. Economic regulation will violate an individual's substantive due process property interest only in those situations, vanishingly

rare in modern jurisprudence, where there is absolutely no reasonable relationship to be perceived between the regulation and the achievement of a legitimate governmental purpose (*Rochester Gas & Elec. Corp. v Public Serv. Commn. of State of N.Y.*, 71 NY2d 313, 320 [1988]); the regulation, to be actionable, must be arbitrary in the constitutional sense—which is to say "so outrageously arbitrary as to constitute a gross abuse of governmental authority" (*Bower Assoc. v Town of Pleasant Val.*, 2 NY3d 617, 629 [2004] [internal quotation marks and citation omitted]). A judicial weighting of the opposed interests more solicitous of personal property rights (*see e.g. Lochner v New York*, 198 US 45 [1905]) has long been rejected on the ground that it would stymie the legislature's exercise of the police power to provide for the common good (*see Nebbia v New York*, 291 US 502 [1934]).

Plaintiffs do not suggest that the purposes advanced by the State for the challenged enactment are illegitimate. Their contention is rather that the enactment does not reasonably advance those purposes because it targets facilities that are not financially distressed—facilities with positive net worth positions—and imposes an across-the-board "freeze" on assets, using as a touchstone an arbitrary percentage of annual revenue. Plaintiffs urge that annual revenue is not itself a reliable indicator of a facility's financial health and that there is no reason why the extent of an operator's unconditioned access to facility assets and equity should depend solely on the facility's most recent annual revenue stream.

Defendants respond that facilities enjoying positive net worth positions—i.e., where total assets exceed total liabilities (*see* 10 NYCRR 400.19 [a] [1])—are not immune from instability precipitated by the withdrawal of substantial facility assets; that the liquidity of even those facilities may be rendered insufficient to meet their day-to-day operating expenses thus impairing the satisfaction of institutional care and treatment obligations. While acknowledging that annual revenue is not itself an infallible index of a facility's financial condition, defendants assert that it is rationally indicative of a facility's scope of operation and ability to sustain services to its residents at mandated levels and that it may therefore be reasonably used as a basis for determining how much may be withdrawn from a facility without prior approval. As to the three percent threshold, defendants explain that the point at which scrutiny should commence will inevitably be fairly arbitrary since it is only after

investigation that any conclusion can be reliably drawn as to whether a withdrawal from a facility in a positive net worth position[2] for non-facility purposes[3] will impair the facility financially or operationally.

We think it apparent that we do not deal here with an outrageously baseless regulatory exercise and it is, in any event, certain that plaintiffs have not met their extraordinary burden in this species of litigation of proving beyond a reasonable doubt that the challenged provision "suffers wholesale constitutional impairment" (*Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 448 [2003]; *and see Overstock.com, Inc. v New York State Dept. of Taxation & Fin.*, 20 NY3d 586, 593-594 [2013]).

Possibly, Public Health Law § 2808 (5) (c) is not as narrowly focused as it might be, or as the Appellate Division thought that regulation equal to the State's legitimate purpose should be; but it does not follow that the statute is violative of substantive due process. The legislature's prescription of means, particularly in the arena of economic regulation, is entitled to judicial deference so long as those means are in a very broad sense reasonably related to the achievement of a permissible regulatory end (*see Rochester Gas & Elec.*, 71 NY2d at 320; *and see Concrete Pipe & Products of Cal., Inc. v Construction Laborers Pension Trust for Southern Cal.*, 508 US 602, 639 [1993] ["under the deferential standard of review applied in substantive due process challenges to economic legislation there is no need for mathematical precision in the fit between justification and means"]). We see no ground to doubt the constitutional adequacy of that relation here.

In employing the three percent threshold based on annual facility revenue, the legislature, exercising the discretion that is ordinarily its prerogative in matters of economic regulation (*see Montgomery v Daniels*, 38 NY2d 41, 64 [1975]), put in place a mechanism that would at once identify contemplated withdrawals sufficiently substantial to be of legitimate regulatory concern, and afford owners of facilities with positive net worth a measure of unregulated access to facility assets and equity. We note that the reasonableness of the same threshold employed for the same identifying purpose in Public Health Law § 2808

2. Any withdrawal from a facility in a negative net worth position would, under subdivision (5) (a) of the statute, trigger the pre-approval requirement.

3. Withdrawals for facility purposes, including the payment of salaries and taxes, are not counted toward the three percent threshold (*see* 10 NYCRR 400.19 [a] [3]).

(5) (b) is not challenged by plaintiffs. Rather, the core objection to the three percent threshold would appear to be that, in the context of section 2808 (5) (c), its crossing triggers a "freeze" on availability of facility equity for private, non-facility purposes that plaintiffs believe is unwarranted, since their facilities, and the others affected by section 2808 (5) (c), have positive net worth positions. The subdivision's "freeze" upon assets or equity exceeding the three percent threshold, however, lasts no longer than the 60 days statutorily afforded the Commissioner to decide a withdrawal application.[4] And, the constraint on access to facility funds within that period is, we think, justified by the legislature's reasonable election to avoid financially improvident withdrawals and their potentially irremediable consequences altogether; facility funds once alienated may be very difficult to recapture and facility operations once compromised for lack of adequate funding may occasion irreparable harm within an especially fragile and dependent resident population. Even facilities with technically positive equity positions are not insusceptible to these prudently avoided consequences of substantial equity/asset withdrawal. Moreover, nursing homes are with ample historical and practical justification pervasively regulated and, in that context particularly, the additional regulatory increment about which plaintiffs now complain cannot be viewed as a constitutionally untoward assault upon the private property interests of facility owners (*see Rochester Gas & Elec.*, 71 NY2d at 322).

Plaintiffs' alternative theory for deeming section 2808 (5) (c) unconstitutional—that the provision's catch-all phrase effects an improper delegation of legislative policy-making power—is not, in our view, more viable than their substantive due process claim. Although the principle of ejusdem generis may not be strictly applicable to require a limitation of the catch-all's reference, since the statute's enumeration is of general criteria and not particular things within a single category of which the catch-all would be naturally comprehended as a circumscribed extension (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 239 [b]), it does not follow that the catch-all effects an unconstitutional delegation. Indeed that is a construction to be avoided, if at all possible (*LaValle v Hayden*, 98 NY2d 155,

---

4. The record discloses that the vast majority of subdivision (5) (c) withdrawal applications have been timely approved.

161 [2002]), and here we think its avoidance entirely practicable. The enumerated criteria clearly tie the Commissioner's disposition of an equity withdrawal application to the financial condition of the facility and its quality of care record. These are highly pertinent and not excessively general criteria and it is reasonably clear, and in any case conceded by defendants, that the catch-all's immediately subsequent reference to "such other factors" does not authorize application dispositions based on criteria that are generically different. We have recognized that the legislature "has considerable latitude in determining the reasonable and practicable point of generality in adopting a standard for administrative action and, thus, [that] 'a reasonable amount of discretion may be delegated to the administrative officials.' " (*Matter of Big Apple Food Vendors' Assn. v Street Vendor Review Panel*, 90 NY2d 402, 407 [1997], quoting *Matter of Levine v Whalen*, 39 NY2d 510, 515-516 [1976].) Inasmuch as the language of the subject subdivision does not absolutely require the conclusion that the legislature's delegation to the Commissioner was constitutionally excessive and the State has, in fact, conceded that the delegation is limited so as to confine the Commissioner, in passing upon a withdrawal application, to the consideration of factors bearing upon a facility's economic condition and quality of care, the conclusion pressed upon us by plaintiffs, that the statute must be invalidated as an affront to the separation of powers, is not legally available.

We have reviewed plaintiffs' remaining arguments and find them to be without merit.

Accordingly, the appealed judgment and the order of the Appellate Division brought up for review should be reversed, with costs, and judgment granted to defendants declaring that Public Health Law § 2808 (5) (c) is constitutional to the extent challenged.

Judges GRAFFEO, READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Judgment appealed from and order of the Appellate Division brought up for review reversed, with costs, and judgment granted to defendants declaring that Public Health Law § 2808 (5) (c) is constitutional to the extent challenged.