Matarazzo v Charlee Family Care, Inc. (2023 NY Slip Op 03824)

Matarazzo v Charlee Family Care, Inc.

2023 NY Slip Op 03824

Decided on July 13, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 13, 2023

534956
[*1]Shaun Matarazzo, Respondent,
v
Charlee Family Care, Inc., et al., Defendants, and The Menninger Foundation et al., Appellants.

Calendar Date:June 6, 2023

Before:Egan Jr., J.P., Aarons, Ceresia, Fisher and McShan, JJ.

Bracewell LLP, New York City (David A. Shargel of counsel), for The Menninger Foundation, appellant.
Ward Greenberg Heller & Reidy LLP, Rochester (Scott R. Jennette of counsel), for Schenectady Community Action Program, Inc., appellant.
Lipsitz, Ponterio & Comerford, LLC, Buffalo (Dennis P. Harlow of counsel), for respondent.

Fisher, J.
Appeal from an order of the Supreme Court (L. Michael Mackey, J.), entered March 2, 2022 in Schenectady County, which denied a motion by defendants The Menninger Foundation and Schenectady Community Action Program, Inc. to dismiss the amended complaint against them.
In August 2021, plaintiff commenced this action under the Child Victims Act (see L 2019, ch 11 [hereinafter the CVA]), seeking to recover damages for the alleged sexual assaults that he endured when he was a resident of a home operated under the auspices of the C.H.A.R.L.E.E. Family Care Program (hereinafter CHARLEE program). Such program provided private boarding for at-risk youth in foster care or in the custody of the Schenectady County Department of Social Services, and was operated, sponsored, managed and/or funded by defendants. As alleged in the amended complaint, while plaintiff was 14 years old and residing at a CHARLEE program home in the early 1980s, he was sexually abused on at least three separate occasions by nonparty Ismael Alhadi, an individual hired by defendants to supervise the children residing at a particular home located on Daniels Avenue in the City of Schenectady. Plaintiff alleges that, prior to being hired by the CHARLEE program, Alhadi had been convicted of robbery, grand larceny and attempted assault, and, subsequently in 1987, of raping a child at a different residential youth boarding facility (see People v Alhadi, 151 AD2d 873, 874 [3d Dept 1989], lv denied 74 NY2d 804 [1989]).
Plaintiff asserted various causes of action against defendants, including, as relevant here, that defendants were negligent in their failure to report the sexual abuse that plaintiff suffered (fifth cause of action), and that defendants failed to report the sexual abuse that plaintiff suffered, as required by the Social Services Law (sixth cause of action). Defendants Schenectady Community Action Program, Inc. and The Menninger Foundation (hereinafter collectively referred to as defendants), moved pre-answer to dismiss the amended complaint pursuant to CPLR 3211 (a) (2), (5) and (7), challenging the constitutionality of CPLR 214-g and arguing that the common-law and statutory duties to report are not recognized causes of action under New York law and do not otherwise apply to them. Supreme Court denied the motion, finding, as relevant here, that the claim-revival part of the CVA satisfies due process, that New York recognizes a common-law failure to report cause of action and that institutions can be found liable for a failure to report pursuant to the Social Services Law. Defendants appeal.[FN1]
We affirm. Defendants raise facial and as-applied constitutional challenges to CPLR 214-g. "It is well settled that legislative enactments are entitled to a strong presumption of constitutionality" (White v Cuomo, 38 NY3d 209, 216 [2022] [internal quotation marks, brackets and citations omitted]). Since "facial challenges to statutes are generally disfavored" (People v Stuart, 100 NY2d [*2]412, 422 [2003]),a party making a facial challenge has the "extraordinary burden . . . of proving beyond a reasonable doubt that the challenged provision suffers wholesale constitutional impairment" (Brightonian Nursing Home v Daines, 21 NY3d 570, 577 [2013] [internal quotation marks and citation omitted]; see Matter of Owner Operator Ind. Drivers Assn., Inc. v New York State Dept. of Transp., ___ NY3d ___, ___, 2023 NY Slip Op 03184, *3 [2023]). As relevant here, "a claim-revival statute will satisfy the Due Process Clause of the [NY] Constitution if it was enacted as a reasonable response in order to remedy an injustice" (Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig., 30 NY3d 377, 400 [2017]).
Here, the CVA was enacted to "open the doors of justice to the thousands of survivors of child abuse in New York State by prospectively extending the statute of limitations" (Assembly Member Mem in Support, Bill Jacket, L 2019, ch 11 at 7). The legislative history acknowledged the unique character of sex crimes where "[v]ictims of childhood sexual abuse struggle for years to come to terms with their abuse," and further explained the justifiable delays in taking action against abusers because "[m]any young adults aren't prepared to deal with the abuse they experienced as children" within the five-year statute of limitations that would otherwise apply (NY St Coalition Against Domestic Violence Mem in Support, Bill Jacket, L 2019, ch 11 at 15; see Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 11 at 7). In addition to those realities, the legislative history highlighted that it is "[a]lso well-established . . . how certain abusers — sometimes aided by institutional enablers and facilitators — have been successful in covering up their heinous acts against children" (Assembly Mem in Support of 2017 NY Assembly Bill A05885A, incorporated in L 2019, ch 11).
As a result, the Legislature sought to address these problems through the enactment of the CVA, determining that it "will finally allow justice for past and future survivors of child sexual abuse . . . [and] shift the significant and lasting costs of child sexual abuse to the responsible parties" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 11 at 7). In doing so, victims were afforded a limited one-year revival period under the CVA, a period of time that has been found reasonable before by the Court of Appeals in other contexts (see Hymowitz v Eli Lilly & Co., 73 NY2d 487, 514-515 [1989], cert denied 493 US 944 [1989]; Gallewski v Hentz & Co., 301 NY 164, 174-175 [1950]; Robinson v Robins Dry Dock & Repair Co., 238 NY 271, 276, 279-280 [1924], appeal dismissed 271 US 649 [1926]). Although such time period was further extended by an additional year due to the pandemic caused by the coronavirus known as COVID-19 (see L 2020, ch 130), there is nothing in the record which suggests that this additional time was unreasonable (see Sweener v Saint-Gobain Performance [*3]Plastics Corp., 2018 WL 748742, *8, 2018 US Dist LEXIS 19893, *22 [ND NY, Feb. 7, 2018, No. 1:17-CV-0532 (LEK/DJS)]; see also Matter of World Trade Ctr. Lower Manhattan Disaster Site Litig., 30 NY3d at 399-400). Based on the foregoing, we conclude that the CVA was a reasonable response to remedy an injustice, and we decline defendants' invitation to depart from this conclusion which is shared by other courts that have addressed a facial challenge before us (see PB-36 Doe v Niagara Falls City Sch. Dist., 213 AD3d 82, 85 [4th Dept 2023]; see also Giuffre v Andrew, 579 F Supp 3d 429, 453 [SD NY 2022]; Farrell v United States Olympic & Paralympic Comm., 567 F Supp 3d 378, 393 [ND NY 2021]; PC-41 Doe v Poly Prep Country Day Sch., 590 F Supp 3d 551, 565 [ED NY 2021], appeal dismissed 2022 WL 14807756, 2022 US App LEXIS 30067 [2d Cir, May 3, 2022, No. 21-2669]).
Turning to defendants' contention that CPLR 214-g is unconstitutional as applied to them, "[a]n as-applied challenge . . . requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right" (Field Day, LLC v County of Suffolk, 463 F 3d 167, 174 [2d Cir 2006] [internal quotation marks omitted]; see People v Piznarski, 113 AD3d 166, 174 [3d Dept 2013], lv denied 23 NY3d 1041 [2014]). Defendants argue that the application of CPLR 214-g violates their due process rights because of the significant passage of time which has "certainly" resulted in the destruction of relevant records, the death of two important witnesses and the fact that other witnesses "had their mental capacity diminished." However, in addition to being conclusory and speculative, this argument neglects that the Legislature specifically considered these issues as it relates to all parties. Indeed, the extensive legislative history of the CVA — which includes support from victims who raise claims that temporally eclipse those alleged here — provides that a justification for passing the CVA was that the current law required a victim to file a civil action "long before most survivors report or come to terms with their abuse, which has been estimated to be as high as 52 years old on average" (Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 11 at 7). Moreover, the record supports plaintiff's contentions undermining several of defendants' purported limitations in defending this action, including their lack of a sufficient effort to locate or contact Alhadi or other witnesses who allegedly held managerial roles during the relevant time period.[FN2] Accordingly, Supreme Court properly denied defendants' motion to dismiss on the ground that CPLR 214-g is unconstitutional as applied to them.
Lastly, we conclude that defendants' remaining contentions, related to the fifth cause of action asserting a negligent failure to report claim and the sixth cause of action asserting a statutory failure [*4]to report claim, are both without merit. Neither cause of action is time-barred, as the plain language of CPLR 214-g provides that "every civil claim or cause of action" under the statute is revived (CPLR 214-g; see Brown v University of Rochester, 216 AD3d 1328, 1332 [3d Dept 2023]). Regarding the fifth cause of action, which, contrary to defendants' contention, is recognized under New York law, courts have previously rejected the argument that a "plaintiff's common-law failure to report cause of action was subsumed by the statutory reporting requirements of Social Services Law article 6, title 6" (BL Doe 3 v Female Academy of the Sacred Heart, 199 AD3d 1419, 1423 [4th Dept 2021]; see Visiko v Fleming, 199 AD3d 1431, 1433 [4th Dept 2021]). We similarly reject defendants' challenge to the sixth cause of action, as such claim is also recognized under New York law, and can further be maintained against an institution in the proper circumstances (see Social Services Law § 413 [1] [b]; Brave v City of New York, 216 AD3d 728, 730 [2d Dept 2023]; Davila v Orange County, 215 AD3d 632, 635 [2d Dept 2023]; BL Doe 3 v Female Academy of the Sacred Heart, 199 AD3d at 479-480; compare Dolgas v Wales, 215 AD3d 51, 58-59 [3d Dept 2023]). Accordingly, given the standard under which we view the amended complaint in this pre-answer motion to dismiss (see Leon v Martinez, 84 NY2d 83, 87-88 [1994]), Supreme Court properly denied defendants' motion to dismiss. We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.
Egan Jr., J.P., Aarons, Ceresia and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: The Attorney General's Office declined to intervene in this matter.

Footnote 2: Tellingly, defendants admit in their appellate brief that, after Supreme Court denied their motion, and therefore after plaintiff had challenged their efforts to locate relevant witnesses, defendants were indeed able to identify and interview a witness who was the director of the CHARLEE program during the relevant time period. Although the substance of this interview is not properly before us, such event further corroborates plaintiff's arguments that defendants' premotion efforts to uncover relevant evidence were flawed or consciously diffuse in nature.