Nellenback v Madison County (2024 NY Slip Op 00110)

Nellenback v Madison County

2024 NY Slip Op 00110

Decided on January 11, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 11, 2024

CV-22-2059
[*1]Michael Nellenback, Appellant,
v
Madison County, Respondent.

Calendar Date:November 15, 2023

Before:Lynch, J.P., Pritzker, Reynolds Fitzgerald, McShan and Powers, JJ.

Hach Rose Schirripa & Cheverie LLP, New York City (Hillary M. Nappi of counsel), for appellant.
The Law Office of Kevin G. Martin, PC, Utica (Kevin G. Martin of counsel), for respondent.

McShan, J.
Appeal from an order of the Supreme Court (Christopher P. Baker, J.), entered September 19, 2022 in Madison County, which granted defendant's motion for summary judgment dismissing the complaint.
In the summer of 1993, plaintiff — who was then 11 years old — was designated as a person in need of supervision and placed in the care of defendant's Department of Social Services (hereinafter DSS). During his placement, plaintiff's case was assigned to a caseworker named Karl Hoch. According to plaintiff, Hoch sexually abused plaintiff, along with other children in defendant's care, over several years. In 1996, Hoch's conduct was reported to defendant and defendant therein reported Hoch to law enforcement. Hoch was later convicted of various sex crimes and died in state prison in 2001. In September 2019, plaintiff filed the instant action under the Child Victims Act (see L 2019, ch 11), alleging, among other things, that defendant was negligent in hiring, supervising and retaining Hoch as a caseworker.[FN1] Defendant subsequently moved for summary judgment dismissing the complaint, and Supreme Court granted defendant's motion. Plaintiff appeals.
We affirm. "To establish a cause of action based on negligent hiring, negligent retention, or negligent supervision, it must be shown that the employer knew or should have known of the employee's propensity for the conduct which caused the injury" (Taylor v Point at Saranac Lake, Inc., 135 AD3d 1147, 1149 [3d Dept 2016] [internal quotation marks and citations omitted]; see Shapiro v Syracuse Univ., 208 AD3d 958, 960 [4th Dept 2022], lv denied 210 AD3d 1456 [2022]). To this end, it is essential in this case that plaintiff demonstrate that defendant "knew or should have known of [Hoch's] propensity to sexually abuse children" (Dolgas v Wales, 215 AD3d 51, 55 [3d Dept 2023]; see Doe v Whitney, 8 AD3d 610, 612 [2d Dept 2004]; Gomez v City of New York, 304 AD2d 374, 374 [1st Dept 2003]) and that there was a "connection between . . . defendant's negligence in hiring and retaining [Hoch] and . . . plaintiff's injuries" (Roe v Domestic & Foreign Missionary Socy. of the Prot. Episcopal Church, 198 AD3d 698, 701 [2d Dept 2021]; see Miller v Miller, 189 AD3d 2089, 2091 [4th Dept 2020]).
The proof submitted in support of defendant's motion established that Hoch was originally hired by defendant in 1979. Hoch first worked as an administrative assistant in the employment and training department, during which he administered a large summer youth program for defendant and received positive reviews for his work. Hoch received a permanent appointment as a DSS caseworker in 1988 and, in that role, received an award as "Madison County Employee of the Year in 1990." According to Michael Fitzgerald, defendant's current commissioner of DSS, at the time Hoch was hired as a caseworker, the sheriff's department conducted a required check of the sex offender registry, but defendant did not request a criminal history check as no requirement [*2]for such a check existed at that time. In any event, Hoch's criminal record at the time he was hired was unremarkable, as the whole of his criminal history was encompassed by his subsequent arrest in 1996 for the type of behavior that underlies this action, albeit with victims other than plaintiff. To this end, a 1987 letter sent by the State Department of Social Services to defendant indicated that Hoch had no history of child abuse or maltreatment. As to supervision, Hoch's direct supervisor noted her regular communication with him and that caseworkers were closely monitored. The records further reflect that there were no reports of any form of misconduct up until the report that ultimately prompted Hoch's arrest. We find that the foregoing was sufficient to establish defendant's prima facie burden, thus shifting the burden to plaintiff "to come forward with evidence sufficient to raise a triable issue of fact as to whether [defendant] knew or should have known that [Hoch] had a propensity to commit acts of sexual misconduct" (Doe v Rohan, 17 AD3d 509, 512 [2d Dept 2005], lv denied 6 NY3d 701 [2005]; see Ghaffari v North Rockland Cent. School Dist., 23 AD3d 342, 343 [2d Dept 2005]). Viewing the evidence in the light most favorable to plaintiff, as we must, we find that he has failed to do so.
Plaintiff focuses on two distinct acts in support of its contention that defendant was negligent in hiring and supervising Hoch. Turning first to defendant's hiring procedures, plaintiff assails defendant's failure to adhere to the requirements contained in the 86-ADM-43 guidance issued by the State Department of Social Services; specifically, he argues that defendant's failure to seek out professional references for Hoch prior to employing him as a caseworker was a breach of its duty that ultimately led to plaintiff suffering harm at the hands of Hoch. However, notably absent from plaintiff's argument is any indication as to what information would have been uncovered by the investigation that plaintiff advocates for and how it would have revealed Hoch's propensity for criminally sexual behavior. To that end, the record establishes that Hoch's prior employment before his initial hiring by defendant in 1979 consisted of a five-year stint as assistant manager at a McDonald's in the City of Oneida, Madison County and a subsequent role as a real property appraisal technician with the City of Oneida Assessor's Office. As to this employment history, plaintiff's lone contention is directed at the fact that several instances of the abuse perpetrated by Hoch occurred in a McDonald's parking lot, which, in his view, indicates that an appropriate check of Hoch's references specific to that employment would have revealed some indication of Hoch's sexual proclivity. We find that assertion to be purely speculative, as Hoch's application materials fail to provide any indication that further inquiry was necessary or that doing so would have revealed evidence of Hoch's propensities[*3](see Dolgas v Wales, 215 AD3d at 55; see Kenneth R. v Roman Catholic Diocese of Brooklyn, 229 AD2d 159, 163-164 [2d Dept 1997], cert denied 522 US 967 [1997], lv dismissed 91 NY2d 848 [1997]; Kirkman v Astoria Gen. Hosp., 204 AD2d 401, 403 [2d Dept 1994], lv denied 84 NY2d 811 [1994]). Moreover, Hoch had been employed by defendant for nearly eight years at the time of his hiring as a caseworker and, by all accounts, had a sterling reputation over the course of his employment (see Dia CC. v Ithaca City School Dist., 304 AD2d 955, 956 [3d Dept 2003], lv denied 100 NY2d 506 [2003]). Accordingly, while we agree with Supreme Court that defendant's failure to obtain references may have technically been in contravention of the requirements contained in the State Department of Social Services' guidance, the failure to identify any proof that could have provided defendant with knowledge of Hoch's propensity to sexually abuse children is fatal to plaintiff's claim for negligent hiring (see Dolgas v Wales, 215 AD3d at 56; Curtis v City of Utica, 209 AD2d 1024-1025 [4th Dept 1994]; compare Easterbrooks v Schenectady County, 218 AD3d 969, 972 [3d Dept 2023]; Waterbury v New York City Ballet, Inc., 205 AD3d 154, 161 [1st Dept 2022]; Chichester v Wallace, 150 AD3d 1073, 1075 [2d Dept 2017]).
We also find that plaintiff's contentions directed at defendant's supervisory function fail to identify a triable issue of fact. Plaintiff's reliance on the offhand comment by Hoch's supervisor during her deposition conceding that she could have reviewed Hoch's case notes more carefully does not negate the fact that she regularly met with caseworkers and, more importantly, that there was no indication in any notes, or anywhere else in the record, that would have provided any notice to the supervisor that Hoch was engaged in sexual misconduct.[FN2] In sum and substance, plaintiff's contentions point to a potential breach of duty on the part of defendant (see generally Easterbrooks v Schenectady County, 218 AD3d at 970). However, even viewing the evidence in a light most favorable to plaintiff and assuming such a breach was established, plaintiff's cause of action further requires that he identify some proof of a connection between the alleged breach and the type of harm he suffered such that the harm itself was foreseeable in some way (see Roe v Domestic & Foreign Missionary Socy. of the Prot. Episcopal Church, 198 AD3d at 701). To this end, neither Hoch's supervisor's alleged irregular review of her caseworkers' notes nor the absence of contemporaneous notes documenting Hoch's interactions with plaintiff provide the necessary "foundation upon which the question of foreseeability of [the specific] harm [inflicted upon plaintiff] may be predicated" (Dolgas v Wales, 215 AD3d at 56 [internal quotation marks and citations omitted]). Said differently, the record is devoid of any proof that would establish the required nexus between the failure by Hoch's supervisor to address any potential [*4]inadequacies in Hoch's preparation of case notes and the sexual abuse that Hoch was perpetrating. In light of the lack of evidence signaling a propensity for committing such acts, the suggestion that a more formal review may have revealed some indication of improper interactions with plaintiff amounts to nothing more than hopeful speculation (see Honohan v Martin's Food of S. Burlington, 255 AD2d 627, 628 [3d Dept 1998]; Kirkman v Astoria Gen. Hosp., 204 AD2d at 403; Doe v Whitney, 8 AD3d at 612; Ray v County of Delaware, 239 AD2d 755, 757 [3d Dept 1997]; see generally Detone v Bullit Courier Serv., 140 AD2d 278, 280 [1st Dept 1988], lv denied 73 NY2d 702 [1988]). Finally, we find that plaintiff's suggestion that adequate monitoring of the use of defendant's vehicles by Hoch would have revealed such behavior by virtue of the length of Hoch's trips is similarly speculative, as the record reflects that defendant's caseworkers routinely took children under their care to lunch or engaged in other travel (see Dolgas v Wales, 215 AD3d at 56). Accordingly, defendant's motion was properly granted.
Reynolds Fitzgerald and Powers, JJ., concur.
Lynch, J.P. (dissenting).
We respectfully dissent. We agree with the majority that plaintiff failed to raise a triable issue of fact on the negligent hiring claim and that such claim was properly dismissed. That said, in our view, a question of fact exists as to whether defendant's supervision of plaintiff's caseworker, Karl Hoch, was negligent during the three-year period before Hoch's arrest in 1996. According to Hoch's direct supervisor, caseworkers in his position met at least monthly with the children whose cases they were assigned to and were required to provide transportation to the children as needed. In her deposition, the supervisor testified that, as part of their responsibilities, caseworkers were expected to keep notes recording where they went when using one of defendant's vehicles to transport a child and these notes were retained in the case files. She explained that supervisors "routinely" read the case notes and talked with caseworkers, but acknowledged that she did not review case notes "as regularly as [she] should have," elaborating that she met with the caseworkers "very regularly" "so [she] didn't necessarily have the time to sit down and read every note." The supervisor further explained that caseworkers provided information on "a self-reporting kind of system." While annual caseworker reviews were performed, the supervisor commented that such reviews were "not really a big deal" and "really [were not] taken very seriously." Correspondingly, plaintiff's expert, Michael A. Nunno, reported that he "saw no contemporaneous records of any contact by . . . Hoch with [plaintiff] or his family." Nunno further opined that Hoch's supervisor was "lax," allowing Hoch "unfettered access to" plaintiff.
Viewed in a light most favorable to plaintiff as the nonmoving party (see Vega v Restani Constr. Corp., [*5]18 NY3d 499, 505 [2012]), the foregoing indicates that Hoch had regular contact with plaintiff over a three-year period and was required, but failed, to document his interactions with the child. The supervisor, in turn, failed to regularly review Hoch's notes and consistently testified that she had "no knowledge" or "any clue of" wrongdoing on Hoch's part — essentially relying upon Hoch's self-reporting. Had the supervisor actually reviewed Hoch's notes, she would have learned that Hoch failed to document any interaction with plaintiff — an omission that presented a genuine concern as to Hoch's conduct and the safety of the child. As a consequence, Hoch was left in a position to cause foreseeable harm that could have been avoided had more diligent supervision efforts been made. The harm was foreseeable because Hoch was effectively concealing his actual contacts with plaintiff over an extended period of time. Under these circumstances, the record presents a question of fact as to both negligent supervision and causation (see Johansmeyer v New York City Dept. of Educ., 165 AD3d 634, 635-636 [2d Dept 2018]). As such, Supreme Court erred in granting defendant's motion for summary judgment on the negligent supervision claim.
Pritzker, J., concurs.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: According to Supreme Court's order, plaintiff conceded that his other claims should be dismissed and plaintiff does not dispute that representation nor raise any contentions directed at those claims in his appeal.

Footnote 2: As noted by our dissenting colleagues, plaintiff's expert's report notes the absence of any contemporaneous notes generated by Hoch during his supervision of plaintiff. The record, however, does not establish, nor does plaintiff's expert conclude, that Hoch failed to generate any notes during the relevant time frame. Rather, the expert's report discusses the lack of documentation as a recordkeeping issue and withholding any suggestion that further information may exist that defendant has not provided (cf. Matarazzo v CHARLEE Family Care, Inc., 218 AD3d 941, 944-945 [3d Dept 2023]). In that vein, plaintiff's proof suffers from a lack of any specific identifiable evidence that would have provided any indication to defendant that Hoch had a predisposition to engage in the abhorrent conduct that plaintiff and others were the victims of. Correspondingly, the assertion by plaintiff's expert that any documentation not provided would have contained details of Hoch's abuse is based upon nothing more than conjecture.